# BARBARA A. MATTILL, EXECUTRIX OF ESTATE OF NORA A. MATTILL, v. PUBLIC EMPLOYEES RETIREMENT BOARD OF THE PUBLIC EMPLOYEES RETIREMENT ASSOCIATION.

112 N. W. (2d) 800.

December 22, 1961—No. 38, 227.

*Walter F. Mondale,* Attorney General, and *William M. Serbine,* Special Assistant Attorney General, for appellant.

*Carroll & Perbix,* for respondent.

KNUTSON, JUSTICE.

This action was commenced for a declaratory judgment to determine the survival benefits of plaintiff as the surviving spouse of Peter M. Mattill under Minn. St. 1957, c. 353. Since the trial of the action and the perfection of the appeal to this court, plaintiff died, and the executrix of her estate has been substituted as plaintiff-respondent.

The case was tried by the court without a jury. The trial judge found in favor of plaintiff, and, after a denial of defendant's motion for amended findings or a new trial, judgment was entered in her behalf, and this appeal is from the judgment so entered.

Dr. Peter M. Mattill was born on October 26, 1887. On February 2, 1924, he was employed by Glen Lake Sanatorium, referred to hereinafter as the sanatorium. During June 1939 he became a member of the Public Employees Retirement Association, referred to hereinafter as PERA. He occupied the position of assistant superintendent and associate medical director of the sanatorium during most of this time.

It has been the practice of PERA to disseminate general information about the association, changes in the laws, its regulations, and other information by transmission of this information to department heads and other personnel who have charge of employees and are willing to give such information to them. Such information was frequently sent to William E. Meier, personnel director of the sanatorium. Inquiries by individual employees regarding the availability of retirement benefits and the terms thereof were frequently addressed to PERA through Meier. Dr. Mattill personally had contacted PERA several times, and at other times he had received information through Meier.

On December 5, 1957, the sanatorium commission voted to grant Dr. Mattill permission to relinquish his duties as assistant superintendent and associate medical director and take over the position of assistant medical director, effective December 26, 1957, in order to relieve him of some of the responsibility of the position he had formerly occupied and to lighten the work load which he carried.

On December 6, 1957, Dr. Mattill paid into the PERA retirement fund the sum of $4,403.20 as a purchase of prior service in a position covered by the PERA retirement system, so that he would be entitled to certain benefits to which he otherwise would not be entitled. This payment has been referred to in the record as a "buy-back" and will be so referred to here. In other words, the payment entitled Dr. Mattill to retirement benefits retroactive to the date of his initial employment, which antedated the establishment of PERA. During October 1957 Dr. Mattill became 70 years of age. He had then been employed by the sanatorium for over 33 years and had been a member of PERA for 18 years.

On December 16, 1957, Dr. Mattill entered Northwestern Hospital suffering from cancer of the spine. He underwent surgery on December 19, 1957. On December 23 he had decided to elect a 10-year certain life annuity. During his hospitalization, either plaintiff or Mr. Meier brought him one of the forms of PERA which, when completed, would constitute an application for the 10-year certain life annuity, specifying retirement as of January 1, 1958. Dr. Mattill signed the instrument on December 26, 1957, in the presence of a nurse and the attending physician, neither of whom signed as a witness at that time. The signed form was then given to Mr. Meier, apparently by plaintiff. The form then was completed by Meier and another employee of the sanatorium signing as witnesses and the sanatorium bookkeeper signing as a notary public. Neither of these witnesses nor the notary public saw Dr. Mattill sign the application. It thereafter was kept in the possession of either Mr. Meier or plaintiff. On January 10 or 11, 1958, Meier dictated to a machine a letter to PERA to accompany the application and proof of service and age of Dr. Mattill. The letter was typed, signed, and mailed on Monday, January 13, 1958, but in the meantime, on January 12, Dr. Mattill had died. The application was received by PERA on January 14.

On January 6, 1958, the superintendent of the sanatorium, by an interoffice communication, notified the payroll and personnel offices of the sanatorium that Dr. Mattill was retired as of December 31, 1957, and reemployed as of January 1, 1958—

"\* \* \* solely for the purpose of guaranteeing Dr. Mattill certain retirement rights and benefits under the Public Employees Retirement Association Laws and regulations. It is a specific determination and is not to be construed as a precedent for future actions, which will be decided on their own merits. If there are any questions concerning it, please check with the undersigned."

Dr. Mattill thereafter remained on the payroll of the sanatorium until the time of his death.

Plaintiff made her application for a survivor's annuity based upon Dr. Mattill's application, and her application was acted on by the Public Employees Retirement Board at a meeting on February 13, 1958. Prior thereto she had received a letter from the secretary of PERA addressed to Mr. Meier on January 21, 1958, stating that she would be entitled to the 10-year certain annuity payments of $408.60 per month because of Dr. Mattill's application. At the February 13 meeting, the board rejected her request and granted her the statutory surviving spouse's benefits available where no application for an optional annuity had been made by the employee. These payments would be in the amount of $150 monthly from age 62 until death or remarriage. The board also issued its check in the amount of $4,403.20 as reimbursement of the "buy-back" paid in by Dr. Mattill, which would not be used unless one of the optional annuities were granted.

The question for determination here is whether plaintiff was entitled to the 10-year certain annuity payments or to the surviving spouse benefits given to her by the board.

Under Minn. St. 1957, §§ 353.29, 353.30, 353.31, and 353.46, and the computations of the PERA, Dr. Mattill, upon retirement, was entitled to one of the following benefits:

(1) Based on account as paid from July 1, 1931, Dr. Mattill could have qualified for a full annuity of $250 per month effective January 1, 1958. In the event of his death, his wife, who was named his sole beneficiary, would have been entitled to a survivor's benefit of $100 per month for life or until remarriage.[1]

---

[1]Minn. St. 1953, § 353.11, as amended by L. 1955, c. 815. While L.

(2) Based on account, including "buy-back" amounting to $4,403.20, Dr. Mattill could have qualified for a normal annuity of $489.98 per month for life beginning January 1, 1958. In case of his death, his wife, who was his beneficiary, would have been entitled to an amount equal to one month's annuity, plus a lump sum of $250.[2]

(3) Based on account, including "buy-back" amounting to $4,403.20, Dr. Mattill could have qualified for an annuity on the 10-year certain and life option in the amount of $408.60 per month, effective January 1, 1958. In case of his death before the expiration of 10 years, his beneficiary, while living, would have been entitled to payments of $408.60 per month until the expiration of the 10 years, when payments would have stopped.[3] Under this option there was a guarantee of $49,032, being payment of $408.60 for 120 months.

If, however, Dr. Mattill failed to elect to receive any of the above optional payments, his wife, as survivor, would be entitled to the benefits conferred by Minn. St. 1957, § 353.31, namely:

"Subdivision 1. Upon the death of a member *before retirement* who has had at least 18 months of credited allowable service, his surviving spouse and dependent children under the age of 18 shall receive the monthly benefit provided below.

\* \* \* \* \*

"Subd. 2. Upon the death of a member *before retirement* who has had at least 20 years of credited allowable service, his surviving spouse shall be paid a deferred annuity in an amount equal to 75 percent of the members annuity computed on the basis provided in sections 353.29 and 353.30 not to exceed $150 per month. This annuity shall be paid when such surviving spouse reaches the age of 62 and shall terminate upon remarriage. The surviving spouse has the option, if qualified, to receive the benefits provided in subdivisions 1 or 2 but not both." (Italics supplied.)

---

1957, c. 935, amended the 1955 act, the rights available to Dr. Mattill under it were retained by a saving clause. L. 1957, c. 935, § 26 (Minn. St. 1957, § 353.46).

[2]Minn. St. 1957, § 353.29; survivor's benefits under § 353.31.

[3]Minn. St. 1957, §§ 353.29, 353.30, subd. 3.

The trial court found that, even though Dr. Mattill was on the payroll of the sanatorium in early 1958, he had effectively retired and that his rehiring as of January 1, 1958, did not disqualify him from receiving the 10-year certain annuity benefits which the trial court found that he had elected to receive. It also found that Mr. Meier has acted as a go-between for employees of the sanatorium and PERA for many years; that it was common practice for employees to leave documents and papers with Mr. Meier for transmittal to PERA; and that PERA knew of such practice and acquiesced therein. Without a specific finding either that possession by Mr. Meier of the application forms was possession by PERA or that actual filing before death was necessary, the court found that the application of Dr. Mattill was effective to establish for him, and after his death for his surviving spouse, annuity payments on the basis of $408.60 per month for 10 years certain.

Determination of the issues raised by this appeal involves a construction of Minn. St. 1957, c. 353, which was the law in effect at the time involved in this matter. The act was amended in many respects by L. 1959, c. 650. References herein are to the act prior to the amendment unless otherwise noted. At the outset, there are some pertinent questions that should be set at rest.

■ PERA is a state agency established by law. It has only such rights and powers as the law gives it. The duties entrusted to it may not be delegated to others.[4]

■ A member of the association has no vested rights in a pension until such rights are established according to the act.[5]

■ Compliance with the statutory requirements for establishing a pension right is a prerequisite to the right to receive such pension.[6]

In 40 Am. Jur., Pensions, § 38, we find the following statement:

"* * * It is the general, if not universal, rule that one who claims

---

[4]See, The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244.

[5]Slezak v. Ousdigian, 260 Minn. 303, 110 N. W. (2d) 1.

[6]State ex rel. Lambert v. Flynn, 348 Mo. 525, 154 S. W. (2d) 52; 70 C. J. S., Pensions, § 7; 40 Am. Jur., Pensions, § 38.

to be entitled to receive a pension must initiate his claim by an application therefor to the officer or tribunal charged with the administration of the pension statute."

■ Having these rules in mind, the crucial question becomes whether there has been a sufficient compliance with our statute to establish a right to the annuity which plaintiff now seeks to recover. Pertinent portions of applicable statutes are:

§ 353.29, subd. 1. "After separation from public service any person who has attained the age of at least 65 years and who received credit for not less than ten years allowable service as a member of the association, or any person who has attained the age of at least 58 years and who received credit for not less than 20 years allowable service of which at least ten years are as a member of the association, is entitled *upon application* to a retirement benefit."

§ 353.29, subd. 4. "Retirement may be made upon application of the member or of some one acting in his behalf, or in the case of an employee in active service, upon the application of the head of the department in which the member is employed."

§ 353.29, subd. 5. "Each member shall fix in his application for an annuity a date for retirement under Laws 1957, Chapter 935. This date cannot be less than 30 days nor more than 60 days *after filing said application. Such application may be filed in the office of the association* not less than 30 days nor more than 60 days prior to the last day for which the member will receive salary. In no event shall an application for an annuity be filed prior to the time the member is eligible to retire by reason of both age and service requirements of Laws 1957, Chapter 935. Upon proof in the form of a certificate signed by a licensed medical practitioner certifying to the satisfaction of the board that a member is no longer able to continue in state service because of physical or mental disability, the retirement board shall waive the 30-day waiting period for fixing the date of retirement. Nothing in this subdivision alters any requirements relative to the effective date of an election to take an annuity which provides for payments to a surviving spouse."

§ 353.30, subd. 3. "The retirement board shall establish optional annuities at retirement which shall take the form of an annuity payable for a period certain and for life thereafter; or as a joint and survivor annuity. Such optional forms shall be actuarially equivalent to the forms provided in section 353.29 and this section. In establishing those optional forms the board shall obtain the written recommendation of an approved actuary and these recommendations shall be a part of the permanent records of the board." (Italics supplied.)

It is obvious that under these statutory provisions the first step required to set in motion action by the association to determine the right to one of the optional annuities is the *filing of an application with PERA* in the manner provided by law. Under § 353.29, application may be made by a member of the association or someone acting in his behalf or, in the case of an employee in active service, upon the application of the head of the department in which the member is employed, but, whether made by a member himself or by someone in his behalf, it must be made while he may become an annuitant. The member must elect which optional annuity he wishes to have. Option is defined in Webster's New International Dictionary (2 ed.) (1960) p. 1711, as "[t]he exercise of the power of choice." Exercise of an option presupposes the act of making an election. Application likewise has a definite meaning. It is defined in Webster's New International Dictionary (2 ed.) (1960) p. 131, as the "[a]ct of applying" or "request."

Here the application did not reach PERA until after the member's death. It is true that he had signed a form of application prior to his death, but until it reached the association it was not an application in the true sense. If an employee about to undergo major surgery may sign an application for an optional annuity that will provide the greatest benefit to his surviving spouse if he does not survive the surgery, and she may hold it in her possession until the outcome of the surgery is known and then file it if he died and withhold it if he survived, the whole plan of optional annuities would become actuarially unsound. The optional features of the plan contemplate an election of an annuity during the employee's lifetime, not after he is dead. While living,

he can elect to take a larger amount during his lifetime with less benefits to his surviving spouse and dependents, or he can take less during his lifetime and have greater benefits for his survivors. We cannot permit him to wait until the vicissitudes of life are determined and then allow his beneficiary to select the option most favorable to her after all the elements of risk are known. While we do not say that the widow here intended to withhold the application until after the employee's death, the right to accomplish that result would follow if we adopt a rule permitting the filing of the application after the employee's death. To do so would wreck the whole plan of optional annuities to be selected by the employee. Clearly, the statute does not contemplate any such permission. It is intended that the various optional annuities should be actuarially sound, and it must follow that it is essential that the application to exercise an option be filed during the lifetime of the employee.

If the application had been filed, as required by our statute, during the lifetime of Dr. Mattill, in all probability it would have been effective even though not acted upon until after his death.[7] However, that was not done in this case.

It is contended by plaintiff that possession of the application by Mr. Meier was equivalent to possession by PERA. We cannot agree with that contention. Mr. Meier was in no sense an agent of PERA. To hold that an application may be delivered to a personnel manager, or other employee of a member's employer, and that such delivery is tantamount to delivery to the association would be to completely ignore the requirements of the statute and make a shambles of the entire procedure of the association since it would never know when an application for retirement had been made by a member. Only if we hold that receipt of the application by the association is an essential prerequisite to the granting of an annuity can the system work at all. Nor can the association be held to have received the application by delivery to Mr. Meier as a result of the existing practice of transmitting information to the sanatorium employees through him. The mere fur-

---

[7]See, Anderson v. United States (9 Cir.) 205 F. (2d) 326; State ex rel. Morse v. Christianson, 262 Wis. 262, 55 N. W. (2d) 20.

nishing of information to another employee of a member's employer for transmittal to the employee cannot be held to designate the one to whom such material is given the agent of the association. The duties of PERA could not be so delegated to one not charged with the duty to act.[8]

Plaintiff also contends that the right to an annuity accrued when Dr. Mattill retired rather than when the application was received by PERA. This contention is untenable for several reasons. In the first place, the statute requires filing of the application with PERA, as we have shown above. Furthermore, there is no retirement as contemplated by the statute until the application is filed. In Cox v. Dunn, 243 Ala. 176, 9 So. (2d) 1, 5, the Alabama court, in considering a pension statute, said:

"* * * The right to a pension is purely statutory and does not arise until an application and proof is made as the statute requires."

That is particularly true where, as under our statute, several optional benefits are available to the member. Choice of the one desired requires the filing of an application before the choice becomes effective. Failure to exercise a choice open to him leaves the member and his surviving beneficiary entitled to receive the benefits which are provided for the case in which an election is not made. That is the situation we have here. As a result, the association correctly determined the available survival benefits to which Mrs. Mattill was entitled.

In view of our decision that filing of the application prior to the death of Dr. Mattill was an essential prerequisite to the establishment of an annuity right, we need not decide other questions raised by plaintiff.

Reversed.

---

[8]Town of Buyck v. Buyck, 112 Minn. 94, 127 N. W. 452.