MOWER COUNTY BOARD OF COMMISSIONERS AND ANOTHER v. BOARD OF TRUSTEES OF PUBLIC EMPLOYEES RETIREMENT ASSOCIATION.

136 N. W. (2d) 671.

July 9, 1965—No. 39,504.

*Wallace C. Sieh,* County Attorney, for appellants.

*Robert W. Mattson,* Attorney General, and *William M. Serbine,* Special Assistant Attorney General, for respondent.

506

Rogosheske, Justice.

The Board of County Commissioners of Mower County sought a declaratory judgment declaring illegal certain claims for employer contributions made against the county by the Public Employees Retirement Association (PERA). PERA denied the illegality of its demands and counterclaimed for the amount due, $5,082.99. From a judgment in favor of PERA, the county appeals.

During the pendency of this action, the county auditor holds the amount claimed by PERA in a special fund. This fund consists of money collected by taxes levied upon certification by the PERA board of trustees, pursuant to Minn. St. 353.28, subds. 1 and 2.[1] Under those provisions, the board of trustees certifies the amount of employer contributions due from each governmental subdivision and sends that determination to the county auditor, who is directed to forward the certification to the governmental subdivision. Each subdivision is directed to secure its employer contributions by the means provided in § 353.28, the primary means being a tax levy on property. This procedure was carried out by Mower County, except that it did not comply with the further statutory directive to pay its employer contributions to PERA. Instead, the county board held the taxes collected and brought this action for a declaratory judgment, asserting that the deter-

---

[1]Minn. St. 353.28, subds. 1 and 2, provides: "Subdivision 1. Each governmental subdivision shall secure its employer contributions and its contributions to amortize the deficit in the retirement fund from the sources and by the means provided in this section. Each governmental subdivision shall pay these contributions to the retirement fund out of moneys collected from taxes or other contributions to the retirement fund out of moneys collected from taxes or other revenue of the governmental subdivision as its obligation for all members employed by such subdivision and these contributions shall be charged as administrative costs.

"Subd. 2. Not later than September 30 of each year beginning with 1957, the total amount due from each governmental subdivision shall be determined by the board of trustees and certified in duplicate by the secretary or an authorized officer of the board to each auditor of each county whose responsibility it is to furnish one copy to each governmental subdivision within the confines of his county. This certification covers a period of 12 months ending on June 30 immediately preceding."

mination of employer contributions by the board of trustees had resulted in an unconstitutional application of the statutes.

The controversy, as it developed at trial, can be divided into two parts. The first concerns employer contributions which PERA certified to be due from the county for 3 fiscal years, 1956-57, 1957-58, and 1958-59, and an additional contribution due for amortizing the deficit in the state fund. The second part involves employer contributions to match amounts paid in by two employees of the county under so-called "buy-back" provisions to cover periods during which they had made no contributions.

The background of the first part of the controversy is as follows: Included in the certifications of PERA for the 3 disputed years were matching employer contributions for employees who were employed by either the clerk of court or the register of deeds and who received all or part of their salaries from one or the other of those county officers. Some of the employees received a portion of their salaries from the county, but in no case did the county pay the entire salary of any employee. Each employee paid the employee contribution due on his total salary, regardless of its source. The clerk of court and the register of deeds, however, made no employer contributions on the salaries they paid. During the years in dispute the county did make employer contributions, but these were computed only on the percentages of salaries actually paid by the county.

PERA determined that the county was liable for employer contributions on salaries derived from the clerk's and register's fees under the authority of Minn. St. 1961, § 353.60, subds. 1 and 2, as amended by L. 1963, c. 641, §§ 32 and 33.[2] This statute, as amended, provides

---

[2]"Subdivision 1. Any appointed or elected officer of a governmental subdivision who was or is a public employee within the meaning of section 353.01 and was or is a member of the fund and whose salary was or is paid in whole or in part from revenue derived by fees and assessments, shall pay his employee contribution in the amount, at the time, and in the manner provided in section 353.27, subdivisions 2 and 4. The employer contribution as provided in section 353.27, subdivision 3, and the additional employer contribution to amortize the unfunded actuarial accrued liability

that the governmental subdivision shall bear the cost of employer contributions based on salary derived from fees for a person employed by an officer of a governmental subdivision, and that such liability is both prospective and retrospective. The full import of this statute cannot be understood without inquiring into its history.

Prior to 1957, when employer contributions were not compulsory, the attorney general issued an opinion which held that an employee whose salary was derived from fees paid directly to a governmental officer was not a "public employee" as defined in Minn. St. 1953, § 353.01, subd. 2, and that therefore such an employee could not join the fund nor could the governmental subdivision make employer contributions for him.[3]

In 1957, after employer contributions were made compulsory,[4] the county attorney asked the attorney general for an opinion on whether Mower County was compelled to make employer contributions based on salary derived directly from fees. Following the reasoning of his earlier opinion that such an employee was not a "public employee," the attorney general replied in the negative. It was apparently on this authority that the county board refused to pay employer contributions certified by PERA for fiscal year 1956 and the 2 following fiscal years.

---

in the fund as provided in section 353.27, subdivision 5, with respect to such service shall be paid by the governmental subdivision.

"Subd. 2. The employer contribution and the additional employer contribution to amortize the unfunded actuarial accrued liability in the fund as provided in sections 353.36, subdivisions 1 and 3, 353.27, subdivisions 3 and 5, due with respect to the services of any public employee who as a member was or is employed by an appointed or elected officer of a governmental subdivision deriving revenue from fees or assessments, shall be paid by the governmental subdivision. This subdivision shall have both retroactive and prospective application as to all such members; and every employing governmental subdivision is deemed liable, retroactively and prospectively, for all employer and additional employer contributions for every such member in its employ. Delinquencies under this section shall be governed in all respects by section 353.28."

[3]Opinion Attorney General, No. 331-B-1, December 22, 1955.

[4]L. 1957, c. 935, § 7.

In 1959, however, the legislature enacted Minn. St. 1961, § 353.60,[5] which made governmental subdivisions liable for employer contributions based on salaries derived from fees. At the same time, the definition of "public employee" was changed to include such officers and their employees.[6] After this amendment, Mower County commenced making employer contributions based on the entire salaries of employees deriving compensation in part or in full from independent fees. However, the board continued to deny liability for employer contributions for the 3 fiscal years beginning in 1956.

Then, in 1963, the legislature amended § 353.60 to make retroactive the liability of governmental subdivisions for employer contributions. One purpose of the amendment obviously was to make benefits equally available to all employees of governmental subdivisions without regard to the source of their compensation. Since benefits are increased only upon the basis of the number of years of contribution to the state fund,[7] the purpose of making the employer concomitantly liable was also to assure actuarial stability in the fund. Faced with this statute, the county board has argued that to compel it now to pay those contributions would be an unconstitutional payment of public money for a private purpose, contrary to Minn. Const. art. 9, § 1.[8] Its argument is grounded on the proposition that the county's payment for the ultimate benefit of the employees has no relationship to the employees' present service. In its view, the payment is a gratuity for past performance.

The second portion of the controversy differs factually from the first, but the position of the county board is the same. Pursuant to Minn. St. 353.36, two county employees paid employee contributions to cover periods during which they were employed by the county but

---

[5]L. 1959, c. 650, § 28.

[6]L. 1959, c. 650, § 1.

[7]Minn. St. 1961, § 353.01, subd. 16, as amended by L. 1963, c. 641, § 5, and § 353.29, as amended by L. 1963, c. 639, § 1.

[8]Minn. Const. art. 9, § 1, provides: "The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, * * *."

were not members of PERA. The purpose of this provision is to permit employees to increase their allowable years of service so that they will be eligible for greater benefits upon retirement.[9] It permits them to obtain benefits equal to those payable to employees who contributed during service, although an employee who utilizes the "buy-back" provisions must pay an increased sum. In order to maintain actuarial stability, the governmental subdivision must match the amount the employee pays. As it did with respect to retroactive employer contributions, the county board asserts that its matching of the employee's payment would be an unconstitutional payment of public money for a private purpose.

On PERA's motion for summary judgment, the trial court dismissed the county board's complaint and ordered judgment for PERA.

After studying the briefs and hearing oral arguments on the merits, we ordered the parties to submit additional briefs on the question whether the county board has standing to question the constitutionality of PERA's application of the law. The significance of that issue in a case of this kind should not be overlooked, and as we apprehended when additional briefs were requested, we are constrained to base our decision upon it. We note cases, however, in which numerous and diverse schemes for public employee retirement acts have been reviewed and which, almost without exception, have been upheld as constitutional.[10] The arguments advanced by the county are not dissimilar to contentions made in those cases. None of them persuades us that a different result would be likely in this case although the question of standing precludes a decision on the merits.

Our leading case on the subject of standing of public officers to challenge the constitutionality of statutes is State ex rel. Clinton Falls Nursery Co. v. County of Steele, 181 Minn. 427, 232 N. W. 737, 71 A. L. R. 1190. We were there presented with the question whether a

---

[9]Minn. St. 353.36; see, Mattill v. Public Employees Retirement Bd. 261 Minn. 371, 112 N. W. (2d) 800.

[10]E. g., McNichols v. Police Protective Assn. 121 Colo. 45, 215 P. (2d) 303; Gossman v. State Employees Retirement System, 177 Neb. 326, 129 N. W. (2d) 97; McQuillin, Municipal Corporations (3 ed.) § 12.142.

county board, in mandamus proceedings, could question the constitutionality of the statute under which it was being compelled to act. We stated (181 Minn. 430, 232 N. W. 738, 71 A. L. R. 1193):

"* * * The better doctrine supported by the weight of authority is that an official so charged with the performance of a ministerial duty will not be allowed to question the constitutionality of such a law. This rule is based largely upon governmental policy. It rests upon the theory that the court should accept as final the acts of the legislature and discourage attacks upon them except where necessary to protect the private interests of the individual asserting invalidity and peculiarly and particularly affected thereby. Officials acting ministerially are not clothed with judicial authority. To permit them to refuse to perform their duty on the ground that the commanding law is unconstitutional would be a dangerous practice in that they who have only ministerial duties would be raising questions affecting the rights of third persons while they themselves would have no direct interest in the question and could not in any event be made responsible."

Although in the Clinton Falls Nursery case our statements were made in the context of mandamus proceedings, they apply just as strongly, if not more so, where public officials have originated litigation to test the constitutionality of statutes.[11] The members of the county board have no interest peculiar to them in the fund. It is a public fund, derived from taxation of all the property in the county. Their duty to levy, collect, and forward taxes for employer contributions is made clear by § 353.28. The statute leaves room for discretion only in the means of collecting the money. Once the money is collected, the board is under a duty to send it to PERA, a duty that can be characterized only as ministerial. It would seem, then, that this is a case where public officials should not be permitted to hamper the progress of governmental administration by refusing to perform a duty they find objectionable or disagreeable.

There is, however, a well-recognized exception to the rule laid down

---

[11]Bricelyn School Dist. v. Board of County Commrs. 238 Minn. 63, 55 N. W. (2d) 602.

in the Clinton Falls Nursery case. When the public interest is so great as to demand review of the constitutional aspects of legislation, we have done so upon the motion of a public official. We so reached constitutional questions in Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598, where an injured workman was attempting to recover benefits under a certain workmen's compensation statute and the custodian of the special compensation fund refused to grant them on the ground that the statute was unconstitutional. Pointing out that the public has an interest in safeguarding workmen who have industrial casualties, we emphasized that the questions raised involved the impartial disbursement of a public fund.[12]

In a broad and general sense, the public interest is involved in every case before us and in every judicial or administrative construction of statutes. Without doubt, it motivated the county board to bring this action. However, under the circumstances here we do not believe that the public interest is so compelling as to justify ignoring the issue of standing. Essentially, the question is whether the members of the county board are the appropriate public officials to question the constitutionality of statutes governing the PERA.

Under the statutory scheme enacted by the legislature, the head of each department in a governmental subdivision must furnish a monthly report to the PERA board of trustees stating the addition or removal of employees. The governmental subdivision must also furnish to PERA requested information concerning the employment status of any individual.[13] Under § 353.28, the board of trustees, not the county board, must determine the amount of employer contributions due from each governmental subdivision and certify that amount to the governing body. It is thus clear that the legislature intended that the board of trustees be vested with the duty of construing the applicable statutes

---

[12]See, also, State ex rel. Hilton v. County of Lincoln, 169 Minn. 145, 210 N. W. 635, and State ex rel. Arpin v. George, 123 Minn. 59, 142 N. W. 945, where, without discussion of standing, we reached constitutional issues when they concerned the disbursement of public funds. Cf. Port Authority of City of St. Paul v. Fisher, 269 Minn. 276, 132 N. W. (2d) 183.

[13]Minn. St. 1961, § 353.07, as amended by L. 1963, c. 641, § 14.

and administering the collection of employer contributions. The governing body of a governmental subdivision is given the ministerial duty of collecting the amount certified by the board of trustees and forwarding it to the board. If a difficult problem should arise, the board of trustees has recourse to its legal adviser, who is the attorney general.[14] We believe the legislature has delegated to PERA, as an agency of the state,[15] the duty of safeguarding the public interest in matters entrusted to it. We note that the county board does not question § 353.28, which directs it to forward the fund to PERA. It goes behind that statute to question the constitutionality of a statute under which PERA made the determination of the amount due. To permit public officials who have no duty to interpret or administer a law endowed with the presumption of constitutionality to assail that law as an excuse for their own failure or refusal to act under a statute clearly imposing only ministerial obligations would result in chaos.

We are supported in our opinion by the fact that this case, as distinguished from the Loew case, involves no direct disbursement of public funds to private persons. The employees concerned are not affected by whether or not these employer contributions are paid. The problem facing PERA is one of actuarial stability. The employer contributions go into a state fund, where they are needed to maintain the fund's integrity. The county board is in no way concerned with the administration of that fund, nor should it be enabled to interfere with the prompt placement of employer contributions where they may earn an investment yield. Both to forestall officials empowered only to perform ministerial duties from assuming judicial authority, and in the interests of governmental efficiency, we must hold that the county board does not have standing to assert constitutional issues in this case.

Affirmed.

---

[14] § 353.08. We note that the attorney general has issued an opinion stating that a governmental subdivision is liable for employer contributions under facts similar to those in this case. Opinion Attorney General, No. 331b-2, October 4, 1963.

[15] Mattill v. Public Employees Retirement Bd. *supra*.