Sophie A. NEELAND, Respondent,

v.

CLEARWATER MEMORIAL
HOSPITAL, etc., Relator,

Commissioner of Employment
Services, Respondent.

No. 46933.

Supreme Court of Minnesota.

Aug. 12, 1977.

Aurel L. Ekvall, County Atty., Bagley, for relator.

Sophie A. Neeland, pro se.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Peter C. Andrews, Asst. Atty. Gen., Frank W. Levin, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard before ROGOSHESKE, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

On this review by writ of certiorari, Clearwater Memorial Hospital, a political subdivision employer, seeks to challenge the constitutionality of provisions in the Minnesota Employment Services Law, Minn.St. c. 268, which require a political subdivision to reimburse the unemployment compensation fund for all benefits paid to an employee, even when such employee discontinues working voluntarily and without good cause attributable to the employer. For reasons which follow, we hold that the hospital does not have standing to challenge the constitutionality of this statutory requirement.

In December 1974, Sophie A. Neeland began a leave of absence from her employment with the hospital and subsequently, in May 1975, filed for unemployment benefits, claiming that she had been forced to cease working because of an injury to her leg. Although the hospital adamantly maintained that the employee had voluntarily quit without good cause and was therefore disqualified under Minn.St.1976, § 268.09, subd. 1, from receiving unemployment benefits, an unemployment compensation claims deputy found sufficient medical justification to award her full benefits. Pursuant to Minn.St. 268.10, subd. 3, the hospital appealed this determination to an appeal tribunal, which affirmed the finding of the claims deputy. The hospital then appealed again, this time to the commissioner of the department of employment services as provided for by § 268.10, subd. 5. On May 21, 1976, a duly authorized representative of the commissioner set aside the appeal tribunal's decision and instead found that the employee had quit her job "voluntarily and without good cause attributable to her employer." Nevertheless, the commissioner's representative held that the employee was not disqualified from retaining benefits paid because of the double affirmation clause contained in § 268.10, subd. 2(6), which precludes disqualifying an employee from retaining benefits when a claim has been twice approved by administrative decisions.[1] It was further held that the hospital, as a political subdivision employer, was obligated under Minn.St.1976, § 268.06, subd. 25, to reimburse the unemployment compensation fund in an amount equal to the benefits paid to the employee.

Since 1973, political subdivision employers have been required to provide unemployment compensation benefits to their

---

1. The complete text of Minn.St. 268.10, subd. 2(6), provides: "If an appeal tribunal decision affirms an initial determination awarding benefits or the commissioner affirms an appeal tribunal decision awarding benefits, such decision, if finally reversed, shall not result in a disqualification and benefits paid shall neither be deemed overpaid nor shall they be considered in determining any individual employer's future contribution rate under section 268.-06."

employees and to make reimbursement payments to the unemployment compensation fund.[2] Such employers are required to "pay into the unemployment compensation fund an amount equivalent to the amount of benefits paid."[3] Minn.St.1976, § 268.06, subd. 25. In contrast, most nongovernmental employers pay a fixed percentage of their annual payroll, known as a contribution rate, into the fund. The contribution rate, computed under Minn.St.1976, § 268.06, subds. 6 and 8, is designed to place a greater burden on those employers who are unable to maintain a steady pattern of employment. Consequently, those employers who are able to reduce the number of employee claims will contribute to the fund at a lower rate than those who have a more sporadic employment history.[4]

While both private and public employees are not disqualified from receiving benefits when an initial award, even though erroneous, is twice upheld, a private employer suffers no economic detriment because any benefits paid under the double affirmation clause are not "considered in determining any individual employer's future contribution rate."[5] However, since a political subdivision employer does not contribute to the unemployment compensation fund on a contribution rate basis, it becomes liable without fault for erroneous payments under the double affirmation clause. It is this difference in the statutory treatment which the hospital contends denies political subdivision employers due process and equal protection of the law.[6]

■ The record leaves no doubt that the constitutional issue was not and could not have been presented to or passed upon by the administrative bodies below. This court has previously ruled upon a constitutional issue raised for the first time on an appeal from an administrative tribunal. *Eldred v. Division of Employment and Security,* 209 Minn. 58, 295 N.W. 412 (1940). We have done so in recognition that the party appealing has raised the issue at the first opportunity in a forum possessing subject matter jurisdiction. See, *Metropolitan Utilities Dist. v. Merritt Beach Co.,* 179 Neb. 783, 140 N.W.2d 626 (1966); *West Central Producers Co-Op. Assn. v. Commr. of Agriculture,* 124 W.Va. 81, 20 S.E.2d. 797 (1942); 73 C.J.S. Public Administrative Bodies and Procedure, § 215. But on this appeal, the hospital attacks the constitutionality of the variant statutory treatment under the double affirmation clause on its face. No facts were developed to support a claim of invidious discrimination by way of a comparison of the amount of the hospital's liability if it were a rate contribution employer rather than a reimbursing employer. Its attack consists only of bald assertions that the contribution rate structure applicable to political subdivision hospitals, and by implica-

---

2. See, L.1973, c. 599, § 1. The Minnesota Employment Services Law, as originally enacted in 1936, did not extend unemployment compensation benefits to political subdivision employees. In 1957, political subdivisions were given the option of participating in the program, and in 1973, the law was amended to its present form by making participation mandatory.

3. To enable a political subdivision to meet its obligations, § 268.06, subd. 27, permits it to levy special taxes. Additionally, when the amount of benefits claimed exceeds 3 percent of the total wages paid in the preceding fiscal year, the excess amount is to be paid from the state treasury. Minn.St.1976, § 268.06, subd. 25.

4. As more fully set forth in Minn.St.1976, § 268.06, subds. 6 and 8, the contribution rate is the aggregate of an employer's "experience ratio" and the "minimum rate." Taking all of the statutory variables into account, the contri-

bution rate will presently vary in most cases from a minimum of 0.9 percent to a maximum of 5 percent, depending upon the amount of claims actually made by employees against the contributing employer's account. See, 6 CCH, Unemployment Insurance Rptr. (Minn.) pars. 1101 to 1170.

5. See, § 268.10, subd. 2(6), quoted in footnote 1, *supra.*

6. Section 268.06 has, since the inception of this lawsuit, been amended by the addition of subd. 31, which gives political subdivision employers the option of contributing to the unemployment compensation fund either on a contribution rate basis or a reimbursement basis. L.1977, c. 297, § 10. The constitutional issue raised by the hospital will therefore cease to exist as of December 31, 1977.

tion to all political subdivision employers, violates equal protection and substantive due process. It would seem, therefore, that in a case such as this a declaratory judgment action would have been the preferable avenue for the hospital to take, for it would have afforded the parties the traditional evidentiary determination by a trial court before appellate review by this court.

We decline to pass upon the hospital's constitutional challenge to the statutory scheme requiring reimbursement to the unemployment compensation fund by political subdivision employers upon the ground that the hospital lacks standing to launch this broad constitutional attack upon these provisions of the Minnesota Employment Services Law. For nearly half a century, we have adhered to the general rule that public officials "charged with the performance of a ministerial duty will not be allowed to question the constitutionality of such a law." *State ex rel. Clinton Falls N. Co. v. County of Steele,* 181 Minn. 427, 430, 232 N.W. 737, 738, 71 A.L.R. 1190, 1193 (1930). The fundamental policy underpinning this rule is that a public official performing ministerial duties ordinarily lacks a direct interest in the enforcement or nonenforcement of a particular statute, and to allow him to challenge its constitutionality would in effect permit him to assert the private rights of third parties. Lawsuits must be prosecuted or defended by the real parties in interest. We have further recognized a more practical justification for this rule in *Mower County Board v. Board of Trustees of PERA,* 271 Minn. 505, 513, 136 N.W.2d 671, 676 (1965):

> " * * * To permit public officials who have no duty to interpret or administer a law endowed with the presumption of constitutionality to assail that law as an excuse for their own failure or refusal to act under a statute clearly imposing only ministerial obligations would result in chaos."

See, also, *Village of Burnsville v. Onischuk,* 301 Minn. 137, 222 N.W.2d 523 (1974), appeal dismissed, 420 U.S. 916, 95 S.Ct. 1109, 43 L.Ed.2d 388 (1975); *Bricelyn School Dist. v. Board of Co. Commrs.,* 238 Minn. 63, 55 N.W.2d 602 (1952).

Engrafted to this general rule is an exception which permits governmental entities to challenge the constitutionality of state legislation when a substantial public interest is involved. An example of this exception occurred recently in *Minnesota State Bd. of Health v. City of Brainerd,* Minn., 241 N.W.2d 624 (1976), where the city claimed that the Minnesota law mandating fluoridation, Minn.St. 144.145, was unconstitutional. We found that the issue of fluoridating drinking water involved a question of substantial public concern to all the people of Brainerd, and that it was therefore permissible for the city to challenge the statute as the representative of the public. See, also, *Port Authority of City of St. Paul v. Fisher,* 269 Minn. 276, 132 N.W.2d 183 (1964); *Loew v. Hagerle Brothers,* 226 Minn. 485, 33 N.W.2d 598 (1948).

Although the general rule and its exception may be simply stated, we recognize that in some cases it is difficult to determine when a sufficient public interest is involved to permit a governmental entity to raise the constitutionality of a state statute. Because of this difficulty, we have occasionally chosen to resolve close cases in favor of a decision on the merits. See, *City of Marshall v. PERA,* Minn., 246 N.W.2d 572 (1976); *Blue Earth County Welfare Dept. v. Cabellero,* 302 Minn. 329, 225 N.W.2d 373 (1974).

But when the public interest in a statutory enactment is clearly de minimus, there is no justification for abandoning our historic position that prohibits governmental entities from challenging the constitutionality of such legislation. Certainly the hospital in the present case cannot seriously maintain that the constitutionality of the statutory provisions requiring it to reimburse the unemployment compensation fund for benefits paid to an employee under the double affirmation clause is a matter of great public concern. In the relatively rare case where the double affirmation clause permits an employee to receive benefits,

even though the initial award was erroneous, the additional tax burden imposed upon the public to maintain the fund is indeed modest. To hold that a political subdivision employer is entitled to assail the constitutionality of legislative enactments every time the public is subject to the slightest economic burden would unjustifiably erode the doctrine of standing as it has been traditionally applied. We therefore hold that the hospital is without standing to pursue the constitutional issues raised on this appeal.

Affirmed.