**METROPOLITAN SPORTS FACILITIES COMMISSION, Minnesota Twins, Inc., Respondents,**

v.

**COUNTY OF HENNEPIN, Relator.**

No. C7–89–1237.

Supreme Court of Minnesota.

Feb. 16, 1990.

Thomas L. Johnson, Hennepin Co. Atty., Mark Kapter Maher, Minneapolis, for relator.

David R. Knodell, Wayne H. Olson, Olson, Gunn & Seran, Ltd., Minneapolis, for Metropolitan Sports Facilities Com'n.

John W. Windhorst, Jr., William R. Goetz, Dorsey & Whitney, Minneapolis, for Minnesota Twins, Inc.

SIMONETT, Justice.

In this Chapter 278 proceeding brought by property owners contesting their tax assessments, we conclude that the County of Hennepin has standing to challenge the constitutionality of the statute exempting taxpayers' property from taxation. We reverse the contrary ruling of the Tax Court.

The Metropolitan Sports Facilities Commission owns and operates the Hubert H. Humphrey Metrodome in downtown Minneapolis. The two major users of the facility are the Minnesota Vikings Football Club, Inc. and the Minnesota Twins, Inc. Certain space in the Metrodome is leased by the Commission to each of these two sports teams for their exclusive use on a year-around, long-term basis. The Vikings' leased space includes a locker room area and a private lounge, plus private spectator boxes which the Vikings sublease to others. The Twins' space includes various administrative and sales offices, a kitchen and two dining rooms, and the team clubhouse. The Commission entered into these use agreements in 1979 as a precondition, imposed by state statute, to constructing the Metrodome. Minn.Stat. § 473.581, subd. 3(a) (1988). Exclusive use is authorized by Minn.Stat. § 473.556, subd. 12 (1988).

When the legislature created the Commission, it exempted the Commission's real and personal property from taxation. Minn.Stat. § 473.556, subd. 4 (1978). In 1979 the legislature authorized the Commission to sell or lease its old sports facili-ty in Bloomington for private development and, as to that property, lifted the property tax exemption. Act of May 25, 1979, ch. 203, § 5, Ex.Sess.1979 Minn.Laws 375, 377, *codified at* Minn.Stat. § 473.556, subd. 6 (1988).

In 1983, apparently for the first time, the Minneapolis city assessor placed the Twins and Vikings leased property on the tax rolls. While the Vikings were challenging the 1983 assessment, the legislature, in 1985, amended the law to provide expressly that the property leased to the Vikings and the Twins was tax exempt.[1] Notwithstanding this 1985 amendment, the city assessor left the leased property on the tax rolls. As a consequence, the Twins were assessed taxes of $37,702.74 for 1986 and $38,536.12 for 1987. The Vikings were assessed taxes of $207,541.84 for 1986 and $216,281.36 for 1987.

This case concerns petitions filed by the Commission and the Twins pursuant to Chapter 278, claiming the Vikings–Twins leased property is exempt from taxation for the years 1986 and 1987.[2]

On cross-motions for summary judgment, the Tax Court ruled that the 1985 exemption statute exempts the leased property from real estate taxation. Hennepin County accepts this ruling. The County, however, further claimed that the exemption statute was unconstitutional because, among other things, it was not for a public purpose and not within any exemption allowed by our state constitution. The Tax Court did not reach the constitutional issues. Instead, it ruled that 'Hennepin County lacked standing to argue unconsti-

---

1. Notwithstanding the provisions of section 272.01, subdivision 2, or 273.19 [providing that in some circumstances public property leased to private parties is taxable], real or personal property *leased by the commission to another person* for uses related to the purposes of sections 473.551 to 473.595, including the operation of the metropolitan sports area, but not including property sold or leased for development pursuant to subdivision 6 [the Bloomington property], *shall be exempt from taxation regardless of the length of the lease.* [Emphasis added.]
Act of June 28, 1985, ch. 14, art. 20, § 17, First Ex.Sess., 1985 Minn.Laws 2302, 2660, *codified at* § 473.556, subd. 4 (1988).

2. The Vikings lost in the Tax Court on their exemption claim for the 1983 taxes payable in 1984. The petitions involved in this case, relying on the 1985 amendment, contest the taxes assessed in 1986 and 1987. The Vikings do not appear here as a petitioner. Because of a 1985 settlement agreement between the Commission and the Vikings, the Commission agreed to pay up to $200,000 a year on any real estate taxes that might be levied against the space leased to the Vikings. Consequently, the Commission has filed petitions here for the Viking space.

tutionality. By certiorari, the County seeks review of this ruling.

The only issue, then, is whether the County has standing in this Chapter 278 proceeding to challenge the constitutionality of the exemption statute.

## I.

■ The general rule is that a public official or governmental unit, in performing a ministerial duty under a statute, may not question the constitutionality of that statute. *Clinton Falls Nursery Co. v. County of Steele*, 181 Minn. 427, 430, 232 N.W. 737, 738 (1930). Legislative enactments deserve some stability; ordinarily a constitutional attack should be allowed only when the private interests of persons directly affected by the legislation need protection. *Id.* To permit public officials to contest the constitutionality of legislation presumed to be constitutional when the officials have only a ministerial role with respect to the legislation introduces uncertainty into governmental operations and raises questions as to the motives of the officials. *Id.; Mower County Board v. Board of Trustees*, 271 Minn. 505, 513, 136 N.W.2d 671, 676 (1965) ("would result in chaos"). Such governmental action may also result in litigation which fails to include interested third parties. Finally, it seems repugnant for a public functionary to be able to force citizens to start lawsuits.

In this case, it is clear that Hennepin County and the city assessor play essentially ministerial roles. *Cf. Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976). The statute exempts the Vikings–Twins leased property from taxation. There is no need for statutory interpretation. Compliance with the law requires nothing more than not placing the property on the tax rolls. If the County is to have standing here, it must find it under an exception to the general rule.

■ In *Clinton Falls* we indicated a public official with ministerial duties might nevertheless have standing "when the rights of the state or the public interest are involved." 181 Minn. at 431, 232 N.W. at 738. This public interest, we later said, must be "substantial." *See Elwell v. County of Hennepin*, 301 Minn. 63, 70, 221 N.W.2d 538, 543 (1974). Over the years we have applied this public interest test with results "not always easy to reconcile." *Blue Earth County Welfare Dept. v. Cabellero*, 302 Minn. 329, 339, 225 N.W.2d 373, 379 (1974).[3]

The doctrine of standing is premised on the preference of courts that cases be litigated by those with a personal interest at stake. This personal interest gives some assurance that the issues will be fully and competently explored. This is particularly important when the constitutional validity of legislation is being questioned. The need for standing is doubly important when the challenger is a governmental unit or official with only ministerial functions. Consequently, when public bodies or officials are involved, in addition to the basic requirement of vigorous, competent advocacy, this court further requires that the case itself involves a "substantial public interest."

Supposedly every legislative enactment is of some public interest. In determining the kind of public interest sufficient to support standing, the following factors should be considered:

---

**3.** Cases finding standing include: *City of Marshall v. PERA*, 310 Minn. 489, 246 N.W.2d 572 (1976); *Minnesota State Bd. of Health v. City of Brainerd*, 308 Minn. 24, 241 N.W.2d 624 (1976), *appeal dismissed*, 429 U.S. 803, 97 S.Ct. 35, 50 L.Ed.2d 63 (1976); *Blue Earth County Welfare Dept. v. Cabellero*, 302 Minn. 329, 225 N.W.2d 373 (1974); *Elwell v. County of Hennepin*, 301 Minn. 63, 221 N.W.2d 538 (1974); *Port Authority of City of St. Paul v. Fisher*, 269 Minn. 276, 132 N.W.2d 183 (1964); *Loew v. Hagerle Brothers*, 226 Minn. 485, 33 N.W.2d 598 (1948).

Cases finding no standing include: *Neeland v. Clearwater Memorial Hosp.*, 257 N.W.2d 366 (Minn.1977); *Village of Burnsville v. Onischuk*, 301 Minn. 137, 222 N.W.2d 523 (1974), *appeal dismissed*, 420 U.S. 916, 95 S.Ct. 1109, 43 L.Ed.2d 388 (1975); *Commissioner of Taxation v. Crow Wing County*, 275 Minn. 9, 144 N.W.2d 717 (1966); *Mower County Bd. of Comm'rs v. Board of Trustees of PERA*, 271 Minn. 505, 136 N.W.2d 671 (1965); *Bricelyn School District v. Board of County Comm'rs*, 238 Minn. 53, 55 N.W.2d 597 (1952).

(1) Whether the subject matter of the legislation is an important public issue to members of the public. This factor entails an inquiry into the impact the legislation has on the social, political, and economic concerns of persons as citizens of the body politic, the immediacy of that impact, and the number of persons sharing these concerns. *See Port Authority of City of St. Paul v. Fisher,* 269 Minn. 276, 293, 132 N.W.2d 183, 195 (1964); *Minnesota State Bd. of Health v. City of Brainerd,* 308 Minn. 24, 30, 241 N.W.2d 624, 628 (1976), *appeal dismissed,* 429 U.S. 803, 97 S.Ct. 35, 50 L.Ed.2d 63 (1976).

(2) Whether the legislation has some adverse effect on the political subdivision which is challenging the legislation. *Commissioner of Taxation v. Crow Wing County,* 275 Minn. 9, 13, 144 N.W.2d 717, 719 (1966); *Minnesota State Bd. of Health v. City of Brainerd, supra.*

(3) Whether the constitutional challenge introduces an uncertainty in the law that, in the public interest, should be, and can be, promptly resolved in the pending litigation. *Minnesota State Bd. of Health,* 308 Minn. at 30, 241 N.W.2d at 628 ("[a]t this stage of the litigation [where trial court had already ruled on legislation for fluoridation of city's water supply], it would be a great disservice to the public to decline jurisdiction," quoting *Village of Burnsville v. Onischuk,* 301 Minn. 137, 143, 222 N.W.2d 523, 527 (1974)).

(4) Whether the public interest would be better served by resolving the constitutional question in a different litigation setting more fair to the private citizens affected and less disruptive of governmental operations. *Commissioner of Taxation v. Crow Wing County,* 275 Minn. at 13, 144 N.W.2d at 719–20 (county not a proper party to represent taxpayers because of its conflicting interests and duties).

These factors are not intended to be all inclusive, nor is it necessary that all four factors be satisfied for there to be standing. The public interest requirement is to be applied in a practical way, keeping in mind that meddling, disruptive litigation is to be avoided while at the same time important public issues deserving judicial resolution be treated expeditiously, fairly, and competently.

## II.

■ Applying the foregoing principles, we conclude that Hennepin County has standing in this case.

First of all, the subject matter of the legislation is important to members of the public. The subject matter involves exemption of property from taxation, a subject specifically addressed by our constitution. As members of the public, people have a strong civic interest in seeing that other taxpayers as well as themselves pay their fair share. *See Kottschade v. Lundberg,* 280 Minn. 501, 507, 160 N.W.2d 135, 139 (1968) ("there is great public interest in real estate taxation and equalization of taxes"). While the amount of taxes involved here is not large relative to the total taxes raised in the county, neither can it be said the sum itself, a half million dollars over 2 years, is insignificant. It is worthy of mention, too, that the operation and management of the Metrodome sports facility is of considerable interest to members of the public, particularly those living in the seven-county metropolitan area. *See, e.g., Lifteau v. Metropolitan Sports Facilities Comm'n,* 270 N.W.2d 749, 754–55 (Minn. 1978) (trial court found public desire for sports facility was great; stadium served a public purpose). *See also* Minn.Stat. § 473.552 (1988).

Second, it may be that if the tax exemption is implemented, it will not adversely affect the County's tax revenues, as that portion of taxes will simply be spread elsewhere, *Village of Burnsville, supra;* but this does not mean the County's concerns have been neutered. The removal of a substantial piece of property from the County's tax rolls implicates the rights of the public at large, rights which the County, as a political subdivision, is in a better position to vindicate than some individual taxpayer for whom the remedy of a lawsuit would be largely symbolic.

Third, with the parties ready and able to deal with the issue, it would seem in the

public interest to resolve the uncertainty about the tax exemption at this time.

Finally, under the fourth factor, we need to consider whether the public interest would be better served in a different litigation setting. This is troubling. If we allow the County standing here, we seemingly condone the County's defying a clear legislative mandate and putting taxpayers to the expense of objecting to the taxes assessed on their property. If the County felt it had standing to vindicate a substantial public interest, it would seem the County should have removed the property from the tax rolls in compliance with the statute and then brought a declaratory judgment action. Instead, the County now finds itself seeking to raise its constitutional challenge in a taxpayer's Chapter 278 proceeding. A Chapter 278 proceeding, however, does not provide for the assertion of an affirmative defense by the respondent County. "Indeed, no provision in the statute [§ 278.01] allows claims of the taxing authority to be heard at all." *Southdale Circle Partnership v. County of Hennepin*, 424 N.W.2d 536, 537 (Minn.1988). In short, Chapter 278 does not seem to be well designed for the rather rare case we have here, where it is the tax collector, not the taxpayer, who is challenging the facial constitutionality of a statute.

Under the peculiar circumstances of this case, we have decided, however, to allow the County's constitutional challenge in this instance, notwithstanding that *Southdale Circle* suggests otherwise. Rightly or wrongly, the taxes have been assessed against the property; consequently, Chapter 278 is the taxpayers' exclusive method of challenging the assessment to obtain a refund of taxes paid. *Land O'Lakes Dairy Co. v. Village of Sebeka*, 225 Minn. 540, 546–49, 31 N.W.2d 660, 664–65 (1948). The principles involved in this constitutional challenge are of public interest to the citizenry, as we have noted. Most importantly, the tax exemption statute under

scrutiny here can only apply to a very small number of taxpayers, namely, the two major sports teams who are the Metrodome lessees. In other words, the burden of defending against the constitutional challenge is being put on only two parties, and the substantial amount of tax savings involved (for the lessees) warrants their undertaking the litigation burden in this proceeding to which they are already parties.[4]

We conclude, therefore, that Hennepin County has standing to raise the constitutional issue. The basic concern of effective advocacy is met. Those who should be parties are parties. The additional requirement of a substantial public interest is also satisfied, particularly by the strong showing with respect to the first and third factors discussed above.

Reversed.

---

4. The Chapter 278 petition is served on the county auditor, the county treasurer, and the county attorney. No responsive pleading is allowed. *Southdale Circle Partnership v. County of Hennepin*, 424 N.W.2d 536, 537 (Minn.1988).

In permitting the constitutional challenge in this instance, we think it should be incumbent on the Hennepin County Board of Commissioners to adopt a resolution authorizing assertion of the constitutional challenge.