IN RE HAZARDOUS BUILDINGS AT 2533 IRVING AVENUE
NORTH, 1313–19 22nd AVENUE NORTH, AND
1018–20 26th AVENUE NORTH, MINNEAPOLIS.
KENNETH UKKONEN AND ANOTHER v.
CITY OF MINNEAPOLIS.

160 N. W. (2d) 249.

June 28, 1968—Nos. 40,885, 40,886, 40,887.

*Shanedling, Phillips, Gross & Aaron* and *John H. Bix,* for appellants.
*Keith M. Stidd,* City Attorney, and *Ronald H. Linman,* Assistant
City Attorney, for respondent.

PETERSON, JUSTICE.

The city of Minneapolis, upon a finding that three buildings variously
owned by the two defendants were "hazardous buildings," instituted
proceedings in the District Court of Hennepin County, pursuant to L.
1965, c. 393, Minn. St. 463.15 to 463.26, for the repair or removal of
the buildings. Defendants appeal from judgments declaring each structure
to be a hazardous building within the terms of the statute and authorizing
the city to raze one building[1] forthwith and raze either of the other two
buildings[2] if by May 1, 1967, the defendant owner had not complied
with an earlier order and judgment of the district court by taking specified
corrective action. The only issue to be considered is whether the evidence
supports the judgment, and we hold in each case that it does.

The procedure and ultimate findings in each case are essentially the
same and, except for evidentiary differences, all three cases are typified
by the case of 2533 Irving Avenue North. The city by an order of its
council on July 8, 1966, directed to defendant Kenneth L. Ukkonen as
the record owner of the premises, identified the building by address and
legal description and made findings—

---

[1] 2533 Irving Avenue North, Minneapolis.

[2] 1313-19 22nd Avenue North and 1018-20 26th Avenue North, both
in Minneapolis.

"* * * that the building is unoccupied; that sections of the concrete block foundation are badly deteriorated; that the wooden foundation sills are decayed and rotted; that the exterior siding is broken, deteriorated and fallen from place; that the roof cornice is rotted and collapsing; that there are large holes in the asphalt roof covering and there is evidence that the roof leaks; that there are large holes in the plaster finish of the walls and ceilings; that many of the window lights are broken and the sash damaged or destroyed; that the water traps of the wash basin and water closet are dry, resulting in open sewers; that the interior of this dwelling is littered with paper, lumber, wood lath, plaster and debris; that this building is a greater fire hazard due to the accumulation of flammable materials, due to the exposure of the wooden framing members caused by the missing plaster surfacing, and due to the fact that this building is open, vacant and unattended; that this building constitutes a hazard to public health because of the unsanitary condition caused by the open sewer piping; that this building constitutes a hazard to public safety because of physical damage, dilapidation, and inadequate maintenance; and that by reason of the above facts the above described building constitutes a hazardous building within the definition of Chapter 393 of the Laws of 1965 [Minn. St. 463.15 to 463.26]." [3]

The council's order directed "that the above hazardous building be made safe and not detrimental to the public health, welfare and safety by being razed * * * within twenty (20) days from the date of the service of this order." Defendant was by the same order expressly "advised that unless such corrective action is taken to comply with this order or an answer is served * * * within twenty (20) days from the date of the service of this order upon you, a motion for summary enforcement of this order will be made to the District Court of Hennepin County." [4]

---

[3] Minn. St. 463.15, subd. 3, provides: " 'Hazardous building' means any building which because of inadequate maintenance, dilapidation, physical damage, unsanitary condition, or abandonment, constitutes a fire hazard or a hazard to public safety or health."

[4] § 463.16 provides: "The governing body of any city, village, town, or borough may order the owner of any hazardous building within the munici-

An August 16, 1966, defendant interposed an answer pro se, stating as follows:

"That the owner will put in repairs and make property in habitable condition so that it will comply with the ordinances of the City of Minneapolis, by doing the following:

"Reroof;

"Reside;

"Repair foundation;

"Replace rotted framing;

"Repair walls, floors and ceiling where necessary;

"Install new steps to both entrances;

"Have wiring and plumbing brought up to Minneapolis Code."

The case came on for trial as a contested case in district court[5] before the Honorable William D. Gunn, at which time defendant was represented by counsel. The principal witness for the city was its chief building inspector, one Willard R. McNaughtan, a professional engineer with senior certificates in mechanical and civil engineering from the University

---

pality to correct the hazardous condition of such building or to raze or remove the same."

§ 463.17, subd. 1, provides: "The order shall be in writing; recite the grounds therefor; specify the necessary repairs, if any, and provide a reasonable time for compliance; and shall state that a motion for summary enforcement of the order will be made to the district court of the county in which the hazardous building is situated unless corrective action is taken, or unless an answer is filed within the time specified in section 463.18."

§ 463.18 provides: "Within twenty days from the date of service, any person upon whom the order is served may serve an answer in the manner provided for the service of an answer in a civil action, *specifically denying such facts in the order as are in dispute.*" (Italics supplied.)

[5] § 463.20 provides with respect to contested cases: "* * * [F]urther proceedings in the action shall be governed by the rules of civil procedure for the district courts, except that the action has priority over all pending civil actions and shall be tried forthwith. If the order is sustained following the trial, the court shall enter judgment and shall fix a time after which the building shall be destroyed or repaired." For the procedure in default matters, see § 463.19; see, also, Village of Zumbrota v. Johnson, 280 Minn. 390, 161 N. W. (2d) 626.

of Minnesota. His testimony was worthy of credit and specifically supported the findings of the city council. The council's findings apparently were based upon McNaughtan's report of his personal inspection of the premises on April 21, 1966, after which he had conferred with defendant on two occasions in May, prior to the issuance of the council's order. McNaughtan additionally testified concerning inspections made by him subsequent to time of the council's order. On July 8, 1966, the day of the council's order, he found from inspection that the conditions were unchanged from the date of his first inspection. He inspected the building again on September 8, 1966, and observed that the building had been reroofed and that new gutters had been installed but were not connected with leaders. The rotted cornice had been painted rather than replaced. On October 27, 1966, the day prior to trial, McNaughtan again inspected the building and found that no other repairs or replacements had been made.[6] Numerous photographs of this and the other buildings were before the court; and, in addition, the court itself, with the parties' consent, apparently made a personal view of this particular building.

Judge Gunn, on November 14, 1966, found as facts that the building was in a state of inadequate maintenance and dilapidation and constituted

---

[6] The testimony of McNaughtan supported similar findings of the council with respect to the other two buildings. With respect to 1313-19 22nd Avenue North, this building, originally built in 1890, contained four dwelling units; it is unoccupied; large sections of plaster finish had been removed or had fallen from the interior walls and ceilings; electrical wiring had been torn loose; the water traps of the various plumbing fixtures were dry and resulted in open sewers; the porches were rotted and in danger of collapse; a large section of the stone foundation was missing; it was littered with flammable materials; and the premises were generally dilapidated and inadequately maintained. With respect to 1018-20 26th Avenue North, this building likewise had been unoccupied for a considerable length of time; it had been moved to its present site in 1964 and placed on a new concrete block foundation; its roof structure, originally removed in order to facilitate moving, had not been restored; there were no electrical or gas services and no sewer or water connection; it was open to trespass by children and others; and, as a separate condition prohibited by § 463.25, there was an unfilled excavation which had been left open for more than 6 months and which the council had additionally ordered be filled to grade.

a fire hazard and a hazard to public safety and health, including the specific conditions first found by the city council. He concluded that the building "is a hazardous building within the terms of Chap. 393, Laws of 1965." His order provided in part—

"* * * that the order of the City Council of the City of Minneapolis is *modified to allow the owner to repair and correct the hazardous conditions* of the said building in accordance with the terms of this order. In the event the said owner does not, within sixty (60) days from the date of this order, repair the stone foundation, repair all broken windows and window glass, repair and restore to a sanitary condition all plumbing fixtures and piping, repair the damaged electrical wiring, remove all debris and combustible waste materials from the said building and securely close and keep closed all doors, windows and other openings into said building while unoccupied, the City of Minneapolis, *upon a proper showing and approval of this Court* shall be authorized forthwith to raze said building." (Italics supplied.)

Judgment was entered accordingly on November 22, 1966.[7]

The city, on March 1, 1967, moved for a further order of the court authorizing it to raze the building forthwith, asserting defendant's noncompliance with the trial court's order and the judgment. McNaughtan at that hearing apprised the court that he had made two subsequent inspections of defendant's premises. An inspection on January 25, 1967, revealed that the stone foundation, windows, and electrical wiring had not been repaired; that the plumbing had not been repaired or restored to a sanitary condition; that debris and combustible waste materials were still present; and that there was an open cellar window permitting continued access to trespassers. His final inspection, made on March 13,

---

[7] § 463.20 provides in part: "* * * If the order is sustained following the trial, the court shall enter judgment and shall fix a time after which the building shall be destroyed or repaired, as the case may be, in compliance with the order as originally filed or modified by the court. If the order is not sustained, it shall be annulled and set aside."

§ 463.21 provides in part: "If a judgment is not complied with in the time prescribed, the governing body may cause the building to be repaired, razed, or removed as set forth in the judgment."

1967, the day prior to hearing on the motion, disclosed that the condition of the premises was the same as he had observed on January 25, 1967, except that the window glass—other than a cellar window—had been replaced.

Judge Gunn entered an order on March 23, 1967, directing "that the City of Minneapolis be and hereby is authorized forthwith to raze the said hazardous building in accordance with the judgment and decree entered herein on November 22, 1966." Judgment was entered accordingly on April 4, 1967. Defendant Kenneth Ukkonen appeals from that judgment and defendant Dorothy Ukkonen appeals from like judgments entered the same day concerning each of the other two buildings.[8]

The evidence amply supports the findings of the trial court and those findings fully support its conclusions of law. The orders for judgment were lawful and appropriate. The proceedings reflect the court's caution and restraint in the enforcement of the statute's drastic provisions. The extension of time granted with respect to the other two premises was without doubt prompted by the court's consideration of the more substantial investment of the owner in those buildings, for McNaughtan had expressed his opinion that only the building at 2533 Irving Avenue North was not economically feasible to repair. Greater leniency than here evinced might well frustrate an important public interest.[9]

Defendants, on appeal, challenge the constitutionality of L. 1965, c.

---

[8] The judgments entered with respect to the other two buildings of defendant owners, however, granted them additional time, until May 1, 1967, to comply with the court's original orders "and with the requirements of the City to its satisfaction." Defendants had not appealed from the conditional judgments entered on March 14, 1967. Our consideration on the appeals in these cases has, however, extended to the whole of the evidence offered to support the findings in both the first judgments and the second judgments.

[9] Judge Gunn observed at the last hearing: "There has just been a complete, it seems to me, disregard by Mr. Ukkonen of the previous order of this Court. We let him set his own date, we let him make his own plans, we even extended it beyond the date that he suggested, if I remember correctly— I think I did that—and he has not complied, and if this was permitted to go on, we would be in here a year from now going through exactly the same thing, and it is going to be brought to a head at sometime and I am bringing it to a head right now."

393, but validity of the statute was at no time challenged or litigated in the court below. We do not decide that question. The statute, we observe nevertheless, bears strong resemblance to similar statutory powers granted the state fire marshal to "condemn, and by order direct the destruction, repair, or alteration of, any building or structure which, by reason of age, dilapidated condition, defective chimneys, defective electric wiring, gas connections, heating apparatus, or other defect is especially liable to fire and which building or structure in the judgment of the state fire marshal, is so situated as to endanger life or limb or other buildings or property in the vicinity." Minn. St. 73.09. The two statutes are similar, too, in their enforcement procedures, §§ 73.10 and 73.16. These statutes have been held constitutional, as a valid exercise of the state's police power. York v. Hargadine, 142 Minn. 219, 171 N. W. 773, 3 A. L. R. 1627; State Fire Marshal v. Fitzpatrick, 149 Minn. 203, 183 N. W. 141; State Fire Marshal v. Sherman, 201 Minn. 594, 277 N. W. 249. See, also, Village of Zumbrota v. Johnson, footnote 5, *supra*.

Affirmed.