LAURANCE ELWELL, JR. v. COUNTY OF HENNEPIN.

221 N. W. 2d 538.

August 23, 1974—No. 44303.

*Gary W. Flakne,* County Attorney, and *David E. Culbert,* Assistant County Attorney, for appellant.

*Faegre & Benson* and *James A. Dueholm,* for respondent.

MacLaughlin, Justice.

The issues in this case are the constitutionality of Minn. St. 273.111, commonly referred to as the green acres statute, and, in the event it is constitutional, the construction of certain of its provisions. The trial court upheld its constitutionality and interpreted the statute in favor of taxpayer. We affirm.

The green acres statute provides that certain real estate devoted to agricultural use [1] is entitled to be valued for real estate tax purposes on a basis which does not consider nonagricultural factors. [2] With the exploding expansion and development in urban areas over the past few decades, there have been rapidly increasing land values in the periphery of metropolitan areas. Both the value of farmland located in those areas and real estate taxes based upon that value have increased accordingly. These higher property taxes, coupled with special assessments caused by sewer and water improvement projects for new development on the fringes of established urban areas which often must pass

---

[1] Minn. St. 273.111, subd. 3, provides in part: "Real estate consisting of ten acres or more shall be entitled to valuation and tax deferment under this section only if it is actively and exclusively devoted to agricultural use as defined in subdivision 6 * * *."

[2] Section 273.111, subd. 4, states in part as follows: "The value of any real estate described in subdivision 3 shall upon timely application by the owner, in the manner provided in subdivision 8, be determined solely with reference to its appropriate agricultural classification and value * * *. In determining such value for ad valorem tax purposes the assessor shall not consider any added values resulting from nonagricultural factors."

through intervening farmland, have become so great in many cases that the owner is no longer financially able to continue the agricultural use of the land. This, in turn, has led to forced sales and other hardships to the owners of such land. The legislature recognized this problem and, in 1967, passed the green acres legislation designed to provide property tax relief so that the land could economically be continued in use for agricultural purposes. The essence of the statute is that farmland, if it meets the requirements of the act, will be valued for tax purposes solely with reference to its agricultural use, which may not necessarily be the same value it would have if other potential uses for the land were considered by the assessor.

In this case, respondent, Laurance Elwell, Jr., made timely application for green acres valuation of two tracts of land in Hennepin County, of which he was part owner, with respect to real estate taxes payable in 1973. The Hennepin County assessor denied the applications, and respondent commenced an action in district court to contest the denial. Respondent also commenced a second action to contest a corrected tax statement for taxes payable in 1972 on one of the tracts of land. The property for which the corrected tax statement was issued had been assessed under the green acres statute in 1971 and 1972, and the correction was made after the Hennepin County assessor denied the 1973 green acres valuation. The cases were consolidated, and the district court, sitting without a jury, found that respondent's property was eligible for valuation under the green acres statute for each of the years for which timely applications were filed. Judgment was entered, and Hennepin County has appealed from the judgment.

One of the two tracts of real estate involved in this appeal is located in the village of Plymouth and the other in the village of Medina. The Plymouth property consists of two parts which are physically separated. One part contains 132 acres, 60 of which are tillable, and lies in the southwest corner of Plymouth.

The other part is in the northwest corner of Plymouth and consists of approximately 80 acres, of which 60 are tillable.[3]

All of the Plymouth property is owned by the same parties: Laurance Elwell, Jr., and his wife, Ruth, own an undivided one-fourth interest; a brother of Laurance, Phillip A. Elwell, and his wife, Katherine, own an undivided one-fourth interest; and a cousin of Laurance, Edwin S. Elwell, Jr., owns an undivided one-half interest.

The Medina property adjoins that portion of the Plymouth property lying in the northwest corner of Plymouth. It is a single tract running from north to south along the Plymouth-Medina border. The northwest portion of the Medina property, consisting of approximately 230 acres, 160 of which are tillable, is owned by the same persons who own the Plymouth property. The balance of the Medina property, consisting of approximately 110 acres, 100 of which are tillable, is owned by Laurance and his brother and mother, Phillip A. Elwell and Virginia K. Elwell. These same individuals have owned the Plymouth property since 1941, and the Medina property since at least 1954.

Since 1965, all of the property has been leased by the owners to Elwell Farms, Inc., a Minnesota corporation. Its shareholders are Laurance and his wife, Ruth; Phillip A. Elwell and his wife, Katherine; and Edwin S. Elwell, Jr. The same individuals are the officers and directors of the corporation. During the term of the lease, all of the land has been operated as a single farming corporation and has been devoted to agricultural purposes, to-wit, raising turkeys. The farming operation on a day-to-day basis is conducted by Laurance. His wife, Ruth, is also very active in the day-to-day farming operations; Phillip A. Elwell oc-

---

[3] The determination of the number of tillable acres is significant because § 273.111, subd. 6, provides: "Real property shall be considered to be in agricultural use provided that annually: (1) at least 33 1/3 percent of the total family income of the owner is derived therefrom, or the total production income including rental from the property is $300 plus $10 per tillable acre * * *."

casionally assists; and Edwin S. Elwell, Jr., does not assist in any way in the active farming of the property.

There are a number of issues which we shall discuss and decide: (1) Whether the constitutionality of Minn. St. 273.111 is properly before this court for decision; (2) if so, whether the statute is unconstitutional as an exemption from taxation not authorized by the Minnesota Constitution; (3) whether the "total production income," referred to in § 273.111, subd. 6, may be comprised solely of cash rental; and (4) whether real estate owned by several persons, each holding fractional undivided interests in the property, may qualify for valuation under § 273.111, even if all of the owners are not actively engaged in farming operations on the property.

■ Several preliminary questions must be resolved before we determine the basic constitutional question:

(a) Apparently questions concerning the constitutionality of the statute were not directly raised at any time during the trial. Respondent contends, therefore, that the issue should not be considered by us on this appeal. Questions not presented to and considered by the trial court are generally held to be beyond the scope of review on appeal. Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. 268 Minn. 390, 129 N. W. 2d 777 (1964); Ukkonen v. City of Minneapolis, 280 Minn. 494, 160 N. W. 2d 249 (1968); Faber v. Roelofs, 298 Minn. 16, 212 N. W. 2d 856 (1973). However, the rule is inapposite in this case because the constitutionality of the statute was argued by the parties in briefs submitted after the trial and was discussed at length in the trial court's memorandum. Hence, the question was considered by the trial court and is within the scope of our review.

(b) Respondent argues that public officers, including the county officials in this case, are prohibited from challenging the constitutionality of a statute. Respondent relies upon State ex rel. Clinton Falls Nursery Co. v. County of Steele, 181 Minn. 427, 430, 232 N. W. 737, 738 (1930), in which we said:

"* * * The better doctrine supported by the weight of authority is that an official so charged with the performance of a ministerial duty will not be allowed to question the constitutionality of such a law. This rule is based largely upon governmental policy. It rests upon the theory that the court should accept as final the acts of the legislature and discourage attacks upon them except where necessary to protect the private interests of the individual asserting invalidity and peculiarly and particularly affected thereby."

However, the court added (181 Minn. 431, 232 N. W. 738):

"There is found among the authorities a well recognized exception to the foregoing rule when the rights of the state or the public interest are involved."

In Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. 2d 598 (1948), we found a sufficient public interest to compel review of the constitutionality of legislation upon request of a public official when the questions raised involved the impartial disbursement of a public fund by the custodian of the fund; and in Port Authority of City of St. Paul v. Fisher, 269 Minn. 276, 132 N. W. 2d 183 (1964), we found a public interest sufficient to permit the challenge by a public official to the constitutionality of a proposed lease of public lands to a private corporation coupled with a bond issue.

On the other hand, in Mower County Board v. Board of Trustees of PERA, 271 Minn. 505, 136 N. W. 2d 671 (1965), we found that the public interest involved was not so compelling as to fall within the exception of the Clinton Falls case. In so doing, we said (271 Minn. 513, 136 N. W. 2d 676):

"* * * To permit public officials who have no duty to interpret or administer a law endowed with the presumption of constitutionality to assail that law as an excuse for their own failure or refusal to act under a statute clearly imposing only ministerial obligations would result in chaos."

However, that is not the situation before us at this time. Hennepin County has more than a ministerial duty under the green acres statute. Through its assessor, it is required to answer such questions as the tillable acreage of the land involved, whether the income from the land is within the requirements of the statute both as to source and amount, and other similar determinations required by the statute. It must then assess the land according to the terms of the statute. Clearly, the Hennepin County assessor is obligated to both interpret and administer the statute, and those functions are not purely ministerial.

Further, we have no doubt that the issue involves a question of substantial public interest. The stated legislative purpose for the statute is found in § 273.111, subd. 2:

"The present general system of ad valorem property taxation in the state of Minnesota does not provide an equitable basis for the taxation of certain agricultural real property and has resulted in inadequate taxes on some lands and excessive taxes on others. Therefore, it is hereby declared to be the public policy of this state that the public interest would best be served by equalizing tax burdens upon agricultural property within this state through appropriate taxing measures."

This declaration by the legislature indicates the important public interest involved. Because of the public interest and because the functions of the assessor are not purely ministerial, we have concluded that Hennepin County may properly present this issue for our decision.

(c) A more difficult question is the effect of the failure of appellant to serve notice upon the attorney general of its assertion of the unconstitutionality of the green acres statute.

Rule 24.04, Rules of Civil Procedure, provides:

"When the constitutionality of an act of the legislature is drawn in question in any action to which the state or an officer, agency or employe of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney

general thereof within such time as to afford him an opportunity to intervene."[4]

No such notice was served upon the attorney general at any time before or after the trial or during the pendency of this appeal. The trial court held that despite failure to give notice appellant could challenge the constitutionality of the statute because "the state, through its agency, is a direct party to these proceedings."

However, even if the county is an agent of the state for some purposes, we do not agree that it is for this purpose. The clear intent of the rule is to provide notice to the attorney general of an attack upon the constitutionality of a legislative act so that he may have the opportunity to defend its constitutionality. Certainly, a case in which a county is attacking the constitutionality of a legislative enactment is not one in which the county is acting as an agent of the state because the state's interest is to defend the constitutionality of legislative acts.

Further, in In re Appeal of Leary, 272 Minn. 34, 136 N. W. 2d 552 (1965), we held that the attorney general must be notified in any case in which he is not already participating as the representative of a party. Mr. Chief Justice Knutson, in discussing the application of the rule, stated (272 Minn. 47, 136 N. W. 2d 560):

"It is only in those actions or proceedings where the state or an officer, agency, or employee of the state is a party represented by the attorney general's office that an exception exists under this rule. In other words, service must be made upon the attorney general in all cases where he is not already in the case. In the cases covered by the exception, he already has notice. He cannot

---

[4] Rule 144, Rules of Civil Appellate Procedure, also provides: "When the constitutionality of an act of the legislature is drawn in question in any proceeding in the Supreme Court to which the state or an officer, agency, or employee of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general thereof."

be expected to have knowledge of every proceeding in which any subdivision of the state represented by a county attorney may raise a constitutional issue as to a statute. It was incumbent upon the appellant in this case, if she wished to raise the constitutionality of the statute, to serve the required notice upon the attorney general."

Therefore, we hold that appellant was required by the rules to give notice to the attorney general that it was asserting the unconstitutionality of a statute.

In In re Condemnation by Oak Center Creamery Co. v. Grobe, 264 Minn. 435, 119 N. W. 2d 729 (1963), we held that if there was no notice to the attorney general under Rule 24.04, Rules of Civil Procedure, an appeal to this court challenging the constitutionality of a statute must be dismissed for lack of jurisdiction. We now question the advisability of that decision. The holding in Oak Center was based upon an analogy between the notice requirement of Rule 24.04 and the service of notice of appeal requirement of Minn. St. 632.02, relating to criminal appeals, which provides:

"* * * Notice of the appeal * * * shall be filed with the clerk of the court where the judgment is entered, and served on the attorney general."

We have held that failure to serve notice of the appeal on the attorney general under § 632.02 and a predecessor statute is jurisdictional, and that appeals in which the notice is not served must be dismissed for that reason.[5] State v. Ettesvold, 263 Minn. 411, 117 N. W. 2d 1 (1962); State v. Besse, 160 Minn. 533, 200 N. W. 356 (1924). Relying on those cases, we held in Oak Center

---

[5] We have also held that the time limitations for filing an appeal formerly prescribed in Minn. St. 1965, § 605.08, and now contained in Rule 104.01, Rules of Civil Appellate Procedure, may not be extended by the supreme court, the trial court, or the parties; and failure to comply with the time limitations is jurisdictional. Tombs v. Ashworth, 255 Minn. 55, 95 N. W. 2d 423 (1959); Eisenberg v. State Farm Mutual Auto. Ins. Co. 270 Minn. 487, 134 N. W. 2d 144 (1965).

that failure to comply with Rule 24.04, Rules of Civil Procedure, deprives this court of jurisdiction on appeal. The difficulty with that reasoning is that in the one case we have a statute requiring service of the notice of appeal upon the attorney general in order to perfect an appeal, while in the other we have a rule of court requiring only that the attorney general be notified of an assertion of unconstitutionality. There is no requirement in Rule 24.04 that the notice of appeal be served on the attorney general. In retrospect, we believe it was inappropriate to raise a failure to comply with Rule 24.04 to the level of a failure to comply with Minn. St. 632.02, which deprives this court of jurisdiction. We conclude that this court, if it chooses, should be free to consider important constitutional issues once they have been decided by the trial court and briefed and presented to us. Therefore, we expressly overrule the Oak Center case and hold that failure to serve notice upon the attorney general under the rules does not deprive this court of jurisdiction on appeal. However, because of the obvious salutary reasons for the rules, as stated herein, we intend to require strict compliance with them and will ordinarily refuse to consider constitutional questions on appeal if there is a failure to give notice pursuant to the rules unless significant reasons appear for doing otherwise.

We have decided to consider the constitutional question in this case primarily because it is one of considerable public importance which should be promptly resolved, and because it has been thoroughly and adequately briefed by both parties in the trial court and this court.[6]

■ We come then to the constitutional question. Appellant claims that the green acres statute is unconstitutional because it is inconsistent with the requirement of uniformity of taxation contained in the Minnesota Constitution and in derogation of

_____

[6] However, if we are inclined in any case to hold a statute unconstitutional, it is extremely doubtful, absent the most exigent circumstances, that we would so rule if the attorney general has not been properly notified.

the equal protection clause of the Fourteenth Amendment of the United States Constitution.

Minn. Const. art. 9, § 1, provides:

"* * * Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes * * *."

Art. 9, § 1, then provides for a number of exemptions from taxation, none of which covers the subject matter of the legislation involved here. Appellant contends that the valuation method authorized by the green acres statute results in an exemption which is unconstitutional because it is not specifically authorized. Appellant argues that the exemption is the difference between the amount of taxes which would be levied, based upon the market value of the property if all valuation factors were considered by the assessor, and the taxes actually levied based upon the value determined by considering only the agricultural use of the land.

The trial court found that the statute is not an exemption statute but a classification statute. A statute which establishes a valid class is not unconstitutional in Minnesota because our constitution only requires that taxes be "uniform upon the same class of subjects."

The approach which we follow in assessing the propriety of legislative tax classifications was outlined in In re Taxes on Property of Cold Spring Granite Co. 271 Minn. 460, 466, 136 N. W. 2d 782, 787 (1965). In that case we said:

"The propriety of classification for the purpose of legislation is primarily for the legislature. Laws passed by the legislature are presumed to be valid, so we assume that the legislature makes inquiry and rightly determines the propriety of the classification which it adopts. *This court will not disturb the legislative determination unless the classification is clearly arbitrary and has no reasonable basis.* [Citations omitted.] The uniformity clause of the Minnesota Constitution is not more restrictive than

the equal protection clause of the Fourteenth Amendment of the Federal Constitution." (Italics supplied.)

The basis for the classification in the green acres statute is the use of the land. Real estate devoted to agricultural use qualifies while land not so used does not.[7] Classification of property according to use is valid and constitutional. In Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 254 N. W. 443 (1934), wherein we upheld the constitutionality of a lower assessed valuation on a specified portion of the actual value of real estate used for homestead purposes, we stated (191 Minn. 368, 254 N. W. 444):

"That use is a proper basis for qualification cannot now well be questioned. The legislature has for many years classified property upon that basis."

The trend toward legislation classifying property according to use has not lessened since the time of the Apartment Operators Assn. decision. To name but a few, there are separate classifications for property used as parking ramps, refineries, agricultural land used as a homestead, agricultural land not used as a homestead, seasonal residential property, and rural property used for growing trees for certain purposes. See, Minn. St. 273.13.

The provisions of Minn. Const. art. 9, § 1, are no more restrictive upon legislative power to tax or classify than is the equal protection clause in the Fourteenth Amendment of the United States Constitution. If the statute here involved does not violate one, it does not violate the other. Further, the power to classify property for taxation purposes is primarily with the legislature, and such laws will not be declared invalid unless it clearly appears that they are unreasonable, arbitrary, or capricious. Every presumption is invoked in favor of the constitutionality of an act of the legislature, and we will not declare it unconstitutional

---

[7] Minn. St. 273.111, subd. 3, footnote 1, *supra.*

unless satisfied, after careful study, that it conflicts with some provision of the Minnesota or United States Constitution.

We have concluded that the green acres statute should be declared constitutional as establishing a reasonable classification for property tax purposes based upon use. Our state constitution, contrary to some, permits classification for tax purposes if fairly done. The overriding purpose of the statute, as expressed by the legislature in § 273.111, subd. 2, set out above, which is to equalize tax burdens on agricultural property within the state, supports our conclusion that the statute is not unreasonable, arbitrary, or capricious. Far from being violative of equality, uniformity, and fairness, this classification allows agricultural property in urban areas to be valued using the same standards as similar property located in predominantly rural areas. We affirm the trial court's determination that the statute does not violate either the Minnesota or the United States Constitution.[8]

■ The next issue is whether production income from the property may consist solely of cash rental paid to the owners by the lessee for the use of the land.

Minn. St. 273.111, subd. 6, provides:

"Real property shall be considered to be in agricultural use provided that annually: (1) at least 33 1/3 percent of the total family income of the owner is derived therefrom, or *the total production income including rental from the property* is $300 plus $10 per tillable acre; and (2) it is devoted to the production for

---

[8] In Kahn v. Shevin, 416 U. S. 351, 355, 94 S. Ct. 1734, 1737, 40 L. ed. 2d 189, 193 (1974), the court made the following statement regarding the application of the equal protection clause of the Fourteenth Amendment of the United States Constitution to state tax statutes: "* * * We have long held that '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperilled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' Lehnhausen v. Lake Shore Auto Parts Co., 410 U. S. 356, 359, 93 S. Ct. 1001, 1003, 35 L. Ed. 2d 351."

sale of livestock, dairy animals, dairy products, poultry and poultry products, fur bearing animals, horticultural and nursery stock which is under sections 18.44 to 18.61, fruit of all kinds, vegetables, forage, grains, bees and apiary products by the owner, slough, wasteland, and woodland contiguous to or surrounded by land described in subdivision 3 shall be considered to be in agricultural use if under the same ownership and management." (Italics supplied.)

Appellant argues that the intent of the statute is to benefit the owner who actively farms his acreage, and that therefore the total family income, or production income requirements of § 273.111, subd. 6, cannot be comprised solely of cash rental income. In this case, all of the land is leased to Elwell Farms, Inc., a corporation, and consequently all income to the owners is in the form of cash rental paid by the corporation. Appellant asserts that allowing the production income to consist solely of cash rental would permit property to qualify which is owned by an absentee owner who has no personal connection with the property.[9]

We have carefully considered appellant's arguments on this point, but have concluded that cash rental income does qualify as production income. The statute plainly states that real property shall be considered in agricultural use provided that annually at least 33 1/3 percent of the total family income is de-

---

[9] It should be noted, however, that § 273.111, subd. 3, provides that no real estate may qualify for green acres valuation unless it either "(1) is the homestead or thereafter becomes the homestead of a surviving spouse, child, or sibling of the said owner or is real estate which is farmed with the real estate which contains the homestead property, or (2) has been in possession of the applicant, his spouse, parent, or sibling, or any combination thereof, for a period of at least seven years prior to application for benefits under the provisions of Laws 1969, Chapter 1039." This prevents land speculators from buying up large amounts of land, leasing it for farm purposes and thereby qualifying it for green acres valuation, while waiting to sell it for a large profit at the most opportune date in the future.

rived therefrom or that "the total production income *including rental from the property* is $300 plus $10 per tillable acre." (Italics supplied.) The language is explicit and clear. We believe the legislature intended that cash rental from the property be included within total production income, and we so hold.

Appellant also refers to the language of subd. 6, which requires that the property must be devoted to the production of certain enumerated agricultural products "by the owner" in order to qualify. Appellant contends that land which is totally rented to another is not devoted to production of farm products by the owner, even if the lessee devotes the property to the required agricultural uses. Again appellant argues that the owner must himself farm the property.

On the other hand, respondent contends that property leased to a lessee who utilizes it for agricultural purposes is devoted by the owner to the production of farm products. Respondent analogizes this situation with that of an elderly farmer who, while maintaining ownership of his farm property, turns active management of the farm over to his children but retains a right to a portion of the income. In either case, a property owner who engages in no actual, physical farm work reaps a monetary benefit from the agricultural use of his property by others. In both cases, the property is devoted to the production of farm products.

While appellant's argument is not without merit, we have concluded that the legislature did not intend that the owner or owners must actively farm the land. First of all, to so hold would be inconsistent with our determination that cash rental qualifies under the statute. Obviously, when the owner's total income is from cash rental, the owner has not actively farmed the land. Therefore, it follows that the owner is not required to actively farm the land to qualify for green acres benefits. Further, we are aided in our construction of the statute by the fact that the cash rental provision was added to the statute in 1969, L. 1969, c. 1039, § 4, while the provision referring to production by the

owner was included in the original statute as enacted in 1967. Ex. Sess. L. 1967, c. 60, § 5. Minn. St. 645.26, subd. 2, provides:

"When, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail."

While we do not consider these clauses to be necessarily irreconcilable, the fact that the cash rental provision was the last to be enacted gives further support to our determination that the owner need not actively farm the land.

Finally, we agree with respondent that land leased to another by the owner specifically for agricultural purposes is devoted by the owner to those purposes and thus qualifies under § 273.111, subd. 6.

For all the foregoing reasons, we hold that production income from the property may consist entirely of cash rental paid to the owner by a lessee for the agricultural use of the land.

■ The final issue raised by appellant is whether real estate owned by several persons, each holding a fractional interest, qualifies under the act, even if all the owners are not engaged in farming activities on the property. For example, one of the owners of the land and a stockholder of the lessee corporation, Laurance Elwell, Jr., is actively engaged in the farming activities while another owner and stockholder, Edwin S. Elwell, Jr., is not. This issue has been answered in our discussion of whether cash rental income qualifies as production income. As stated there, if rental income may be used to comply with the provisions of the green acres statute, it follows that the statute does not require that the owner or owners actively participate in the farming operations carried out on the land.[10] Further, the benefit

---

[10] L. 1973, c. 450, amended § 273.111, subd. 3, to permit qualification of property owned by a family farm corporation if the property is the homestead of a shareholder of the corporation. Such a corporation may qualify regardless of the inactivity of its shareholders in the actual farming operations, although the shareholders must be members of a family related to each other within the third degree of kindred according to the rules of civil law.

to the land under the green acres classification is based upon use. If the real estate is used for the requisite agricultural purposes, produces sufficient income as set forth in subd. 6, and meets the other requirements of the statute, it qualifies for green acres classification whether or not the owners are active in the farming operations.

Since the real estate in question complies in all respects with the statutory requirements, we affirm the decision of the trial court.

Affirmed.

MR. JUSTICE TODD and MR. JUSTICE SCOTT took no part in the consideration or decision of this case.