STERLING CUSTOM HOMES
CORPORATION, Relator,

v.

COMMISSIONER OF
REVENUE, Respondent.

No. C2-85-2108.

Supreme Court of Minnesota.

Aug. 8, 1986.

James Lockhart, Gary Blackford, Minneapolis, for relator.

Amy Eisenstadt, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

COYNE, Justice.

By writ of certiorari Sterling Custom Homes Corporation (Sterling) challenges the. tax court's decision that Sterling's sales to contractors of prefabricated custom home component packages are "retail sales" subject to sales tax on the value of the packages sold. We affirm.

Sterling, a Wisconsin corporation, prefabricates custom-designed home component packages ranging in price from $20,000 to $200,000. Based on the ideas and rough sketches brought by builders or home buyers, Sterling makes formal drawings of a custom-designed house. When the buyer chooses the materials to be used, Sterling and the builder complete detailed specifications. Sterling also prepares detailed drawings of the foundation on which the components are to be set. At its home plant in Fond du Lac, Sterling then prefabricates unique components, non-interchangeable with components for other houses, in regular sequence—walls, deck

and floor sections, roof, and finally the interior and trim.

When the builder has constructed the foundation according to Sterling's drawings, Sterling delivers the package of components. The terms and conditions of the sale provide that Sterling is "responsible only for curbside delivery" and that it is the customer's responsibility to unload Sterling's trucks promptly and to supply necessary equipment and manpower and to properly erect the Sterling components. The builder hires a crane and operator, and Sterling's driver directs the crane operator in unloading and placing the larger components on the site in proper sequence and position. The driver also supervises the builder's employees in attaching the components to the foundation and to each other, and he repairs any defective or ill-fitting components. Sterling employees unload the smaller components and place them in the parts of the house where they are to be installed. Sterling's driver remains at the job site until the component package is successfully in place. The home package constructed by Sterling does not include "mechanicals" and the builder performs or subcontracts the plumbing, wiring, heating, and drywall.

In short, Sterling sells the builder a prefabricated custom home component package. The builder sells the completed home to the home buyer. While Sterling's employee stays at the building site and exercises some supervision over affixing the components, under the contract between Sterling and the builder, it is the builder—not Sterling—who is responsible for erection and completion of the house.

Minn.Stat. § 297A.02 (1982) imposes an excise tax on "gross receipts from sales at retail * * * made by any person in this state * * *." "Sale" is defined as "[a]ny transfer of title or possession, or both, of tangible personal property * * * for a consideration in money or by exchange or barter." Minn.Stat. § 297A.01, subd. 3 (1982). Tangible personal property includes "property which is to become a fixture or which is to lose its identity by incorporation in or

attachment to real property." Minn.Stat. § 297A.01, subd. 11 (1982). A sale at retail is defined to be "a sale for any purpose other than resale in the regular course of business." Minn.Stat. § 297A.01, subd. 4 (1982). Subdivision 4 also adverts specifically to sales of building materials:

> Sales of building materials, supplies and equipment to owners, contractors, subcontractors or builders for the erection of buildings or the alteration, repair or improvement of real property are "retail sales" or "sales at retail" in whatever quantity sold and whether or not for purpose of resale in the form of real property or otherwise.

In addition, the commissioner has promulgated a regulation dealing with "building material, supplies, or equipment" which states that the term refers to property intended to become part of a new building or improvement to real estate. Minn. Rules 8130.1200 (1985). A general contractor is described as one who contracts, usually with the owner, to furnish materials and labor for the performance of a construction contract, oftentimes to build the entire project. Minn. Rules 8130.1200, subpart 2(A) (1985). A subcontractor contracts with the general contractor to perform a portion of the work for which the general or prime contractor is responsible. Minn. Rules 8130.1200, subpart 2(B) (1985). These definitions are, however, expressly limited. "The terms contractor and subcontractor are not applicable to persons who merely sell tangible personal property in the form of building materials, supplies, or equipment to construction contractors, for delivery at the job site without any requirement that they install such tangible personal property." Minn. Rules 8130.-1200, subpart 2(C) (1985).

Sterling contends that its activities at the construction site bring it within the definition of contractor or subcontractor and that, therefore, its purchase of raw materials is the taxable retail sale, not its sale of prefabricated component packages to builders. The tax court ruled, however, that Sterling was a supplier of building

materials, and we consider *Duluth Steel Fabricators, Inc. v. Commissioner of Taxation*, 306 Minn. 567, 237 N.W.2d 625 (1975), indistinguishable in all significant respects. Although Duluth Steel is a fabricator of structural steel, Duluth Steel, like Sterling, fabricates components off-site for on-site incorporation into a building. Both supervise the unloading and placement of the components, designate the method of connection and the sequence of erection, and correct defective or ill-fitting components. Neither Duluth Steel nor Sterling, however, performed or was responsible for the performance of the actual work of construction which resulted in a completed improvement to real estate. *See, e.g., County of Hennepin v. State*, 263 N.W.2d 639 (Minn.1978). As we recognized in *Duluth Steel*, "Generally, suppliers are those who sell building materials. Contractors and subcontractors erect and construct the material into a building on the site." 306 Minn. at 568–69, 237 N.W.2d at 627 (quoting the tax court). We hold, therefore, that Sterling, like Duluth Steel, is a supplier of materials and that the sale of a prefabricated custom home component package is a "retail sale" subject to sales tax.

■ Neither are we persuaded that imposition of the Minnesota sales tax on Sterling's sale of home component packages discriminates against interstate commerce in violation of the federal commerce clause, U.S. Const. art. 1, § 8, cl. 3, or that it violates the state uniformity clause, Minn. Const. art. X, § 1.

Equal treatment for in-state and out-of-state taxpayers similarly situated is, of course, requisite to the validity of a sales or use tax on goods imported from out-of-state. *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963). The comparison, however, must be between the most similarly situated parties. It is not, as Sterling contends, a comparison between taxing the sale of home component packages prefabricated by an out-of-state manufacturer and exempting the sale of the completed struc-

ture by a Minnesota on-site builder. The comparison lies between taxing the sale of home component packages prefabricated by an out-of-state manufacturer and those prefabricated by a Minnesota manufacturer. The sale is subject to equal tax regardless whether fabrication of the components was performed in Minnesota by a Minnesota manufacturer or out-of-state by an out-of-state manufacturer like Sterling. Hence, the tax does not discriminate against interstate commerce.

■ Nor does the imposition of a sales tax on the sale of prefabricated custom home component packages violate either the uniformity clause, Minn. Const. art. X, § 1, or the equal protection clause, U.S. Const. amend. XIV, § 1. *Elwell v. County of Hennepin*, 301 Minn. 63, 75, 221 N.W.2d 538, 546 (1974) (state constitutional provisions regarding taxation no more restrictive upon legislative power to tax or classify than is equal protection clause of 14th Amendment of United States Constitution). The purpose of the sales tax statutes and regulations is to impose a tax on the transfer of personal property to the ultimate consumer. It can hardly be disputed that prefabricated custom home components retain their character as personal property until they are affixed to a foundation constructed on real property. To declare that the party who converts that personal property to an improvement of real property and is contractually obligated to perform that conversion is the ultimate consumer is a classification which is, at least debatably, rationally related to the statutory purpose. *See Rio Vista Non-Profit Housing Corp. v. County of Ramsey*, 335 N.W.2d 242, 246 (Minn.1983).

Affirmed.