### James B. LUND and Ingrid Lund, Relators,

v.

### COUNTY OF HENNEPIN, Respondent.

#### No. C9–85–2106.

Supreme Court of Minnesota.

April 3, 1987.

**618**

James B. Lund, Minneapolis, for relators.

Thomas L. Johnson, Co. Atty., Robert T. Rudy, Asst. Co. Atty., Minneapolis, for respondent.

## OPINION

AMDAHL, Chief Justice.

Relators James and Ingrid Lund petition this court on writ of certiorari to review the decision of the Tax Court upholding an assessment of homestead property taxes on relators' property. The Tax Court held that the statutory scheme for determining homestead property taxes is valid under the federal and state constitutions. We affirm.

The relevant facts are not in dispute. Relators own homestead property in Minneapolis. The county assessor valued relators' property at $148,800 as of January 2, 1983. Relators' property was defined as class 3c property under Minn.Stat. § 273.-13, subd. 7 (1984).[1] That statute provided in part:

> The first $64,000 of market value of class 1a property must be assessed at 18 percent of its market value. The homestead value of class 1a property that exceeds $64,000 must be assessed at 28 percent of its value.
>
> \*    \*    \*    \*    \*    \*
>
> (d) The tax to be paid on class 1a or class 1b property, less any reduction received pursuant to sections 273.123 and 473H.10, shall be reduced by 54 percent of the tax imposed

---

1. Section 273.13, subd. 7, has been repealed and replaced by Minn.Stat. § 273.13, subd. 22 (1986), which states:

> (a) Except as provided in subdivision 23, real estate which is residential and used for homestead purposes is class 1. The market value of class 1a property must be determined based upon the value of the house, garage, and land.

All * * * real estate * * * used for the purposes of a homestead, * * * shall be valued and assessed as follows: the first $30,000 of market value shall be assessed at 17 percent; the next $30,000 of market value shall be valued and assessed at 19 percent; and the remaining market value shall be valued and assessed at 30 percent. * * * The property tax to be paid on class 3c property * * shall be reduced by 54 percent of the tax imposed on the first $67,000 of market value. The amount of the reduction shall not exceed $650.

Relators' property was taxed accordingly, including a reduction of $650 from the assessment, as statutorily provided. On appeal to this court, relators present several constitutional challenges to the homestead taxing scheme. Before addressing relators' arguments, it is important to note the standard of review applied by this court. Where a party challenges a statute as unconstitutional, this court will not strike down the statute unless "the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision." *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979). As stated by the United States Supreme Court, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *see also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981). In the context of challenges to a state taxing scheme, the United States Supreme Court has been especially deferential. In *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court rejected an equal protection challenge against an ad valorem property tax to supplement educational financing. The Court stated:

> on the first $68,000 of market value. The amount of the reduction shall not exceed $700.

No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause."

411 U.S. at 41, 93 S.Ct. at 1301.

■ Relators challenge the taxing scheme under both the equal protection clause and article X, § 1 of the Minnesota Constitution, commonly known as the "Uniformity Clause."[2] We have determined that the state uniformity clause is no more restrictive upon the state legislature's power to tax or classify than the federal equal protection clause, and that an analysis under equal protection is applicable to the state constitutional challenge. *See, e.g., Hegenes v. State*, 328 N.W.2d 719, 720–21 (Minn.1983); *Matter of McCannell*, 301 N.W.2d 910, 916 n. 4 (Minn.1980).

■ Relators argue first that the statute violated equal protection because it provided for homestead property to be assessed at different graduated rates, based on the estimated value of the house. We find that relators have not met the difficult burden of proof of showing that this scheme of taxation violated equal protection. In *Apartment Operators Ass'n v. City of Minneapolis*, 191 Minn. 365, 254 N.W. 443 (1934), we held a statute constitutional which gave tax preference to homesteads of $4,000 or less, determining that "ability to pay may properly be taken into consideration by the legislature in classifying property for the purpose of taxation." *Id.* at 370, 254 N.W. at 445.

We hold that our decision in *Apartment Operators* is controlling on this issue. Relators provide no evidence showing that the legislature could not have reasonably determined that market value of property gives

**2.** The uniformity clause requires that: "Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes * * *."

some indication of the ability to pay, and accordingly decided to tax homesteads to reflect market values. In the absence of any such showing, we are compelled to reject relators' argument.

■ Relators also challenge the homestead tax based on its distinction between owners and renters. Relators argue that creating a preference for an owner occupier over a renter occupier creates a preference and establishes an inequality. In *Miller Brewing,* this court enunciated the test to determine the constitutionality of statutory classifications:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary òr fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

284 N.W.2d at 356.

In the present case, the preference given to homestead property "has a tendency to encourage the use of land for homestead purposes and is in furtherance of a sound public policy. The stability of government is promoted thereby." *Apartment Operators,* 191 Minn. at 369, 254 N.W. at 445. The state may promote homestead ownership as a legitimate goal. To achieve this end, the legislature could have reasonably found that reduced tax liabilities for homestead owners encourages individuals to

purchase homestead property and provided benefits to homeowners, who face greater maintenance costs and risk of substantial loss. The distinction between owner occupiers and renter occupiers is genuine, not fanciful, in light of the added responsibilities of homeowners and their different relation to the property from renters.[3] These distinctions justify the different tax treatment between homestead owners and renters.[4]

■ Relators also argue that the taxing statute violates due process because it constitutes "special legislation" exempting property from taxation. We have determined that a statute is invalid as special legislation if it arbitrarily classifies subjects or if it does not "include and operate uniformly upon all [members] of the class. * * *." *Duluth Banking Co. v. Koon,* 81 Minn. 486, 490, 84 N.W. 335, 337 (1900). In the present case, we have already determined that the classification of homestead property is valid. The remaining issue is whether the statute taxed all members of each class under a uniform scheme. Relators have not provided any showing that members of the same class who are similarly situated are treated differently. We therefore find that relators have not shown beyond a reasonable doubt that Minn.Stat. § 273.13 violates due process.

■ Relators next argue that the reduction in taxes for homestead owners is an exemption and is invalid because exemptions from taxation may only be made by constitutional amendment. In *Elwell v. County of Hennepin,* 301 Minn. 63, 221 N.W.2d 538 (1974), this court addressed the validity of Minn.Stat. § 273.111, referred to as the "green acres statute," which provides a reduced tax assessment for agri-

**3.** Relators fail to acknowledge an important distinction between homestead property and rented residential property—the rental property represents income-producing property to the owner. The legislature could also take this distinction into account in deciding to tax nonhomestead residential property differently from homestead property.

**4.** The legislature has attempted to reduce the discrepancy between property taxes paid by owners and renters through the State of Minne-

sota Property Tax Refund Act, Minn.Stat. ch. 290A. Under this act, both owners and renters are eligible for property tax credits based on household income and property tax paid. The maximum refund under chapter 290A. is $1,125. It is important to note that any refunds to homestead owners under chapter 290A were reduced by the homestead credit provided under Minn.Stat. § 273.13, subd. 7. *See* Minn.Stat. § 290A.04, subd. 2b (1984).

cultural land "determined solely with reference to [the property's] appropriate agricultural classification and value * * *." Section 273.111, subd. 4 (1986). Appellant Hennepin County argued that the valuation method under the green acres statute was unconstitutional because it was not specifically authorized. This court determined that the statute was not an exemption statute but a classification statute and that the tax reduction under the green acres statute was proper if the classification of property was reasonable. *Id.* at 74–75, 221 N.W.2d at 546. In the present case, we have determined that the homestead classification is valid. We thus conclude that the challenged legislation is not an invalid exemption statute but instead a statute which reasonably classifies property.

▇ Relators also challenge the use of general revenue funds to replace homestead tax reductions. Minn.Stat. § 273.13, subd. 15a (1984), provided for payment from the general fund for the purpose of replacing revenue lost as a result of the reduction in property taxes provided under subdivisions 6, 7, and 14a of the statute. Relators argue that such use of general revenue funds is improper. We disagree.

In *Village of Burnsville v. Onischuk*, 301 Minn. 137, 222 N.W.2d 523 (1974), *appeal dismissed*, 420 U.S. 916, 95 S.Ct. 1109, 43 L.Ed.2d 388 (1975), we determined whether Minn.Stat. ch. 473F (1974), the "Metropolitan Fiscal Disparities Act," violated the state constitution. Chapter 473F pooled commercial property taxes collected in a seven-county area and redistributed them in a manner which provided more funds to areas with less commercial development than had been collected from them. We found the statute did not violate the state constitutional requirement for uniformity of taxes. *Id.* at 153–54, 222 N.W.2d at 532–33.

Applied to the taxing scheme at issue, *Onischuk* indicates that distribution of general revenue funds in varying amounts as credits to homeowners does not violate the uniformity clause of the state constitution. Relators provide no other showing that the use of general revenue funds to promote homeownership is constitutionally improper.[5] We therefore hold that Minn. Stat. § 273.13, subd. 15a, validly provided for use of general revenue funds to replace amounts reduced by the homeowners' exemption.

▇ Finally, we are presented with the issue of whether there is some limit on the amount at which property may be taxed. For example, could the state tax a $100,000 piece of property at the rate of $100,000 per year? We need not determine what, if any, upper limit exists on property taxes. In the present case, the record indicates that relators' property was taxed at approximately 4.9%. This rate of taxation is clearly not excessive.

In summary, we hold that relators have not shown beyond a reasonable doubt that the homestead property taxing scheme violates either the state or federal constitution.

Affirmed.

WAHL, Justice (dissenting).

I have reexamined *Apartment Operators Ass'n v. City of Minneapolis*, 191 Minn. 365, 254 N.W. 443 (1934) in light of Justice Yetka's dissent and have concluded that our decision there does not control our decision in this case as to whether Minn. Stat. § 273.13, subd. 7 (1984) violates the equal protection clause of the fourteenth amendment of the United States Constitution and article X, § 1, the uniformity clause of the Minnesota Constitution. Minnesota Statutes, chapter 359, enacted in 1933, did not, in fact, provide for a system of two classifications of homesteads with value assessed on a graduated scale. Rather the legislature created, for the first time, a homestead exemption, one homestead exemption, for the purpose of real property taxation. For both class 3b un-

---

**5.** In fact, several other property classes receive tax relief through general revenue funds, including agricultural homestead property, Minn.Stat. § 273.13, subd. 23 (1986); homestead structures located on property not owned by the occupant, Minn.Stat. § 273.124, subd. 7(a) (1986); and state paid wetlands, Minn.Stat. § 273.115 (1986).

platted real estate and class 3c platted real estate, the first $4,000 of true and full value constituted the homestead exemption. This exemption, as Justice Yetka has suggested, would have covered all homes which today would be valued up to and well in excess of $100,000. In both classes of property, unplatted and platted, under the 1933 act, the value of real estate used for homestead purposes which exceeded $4,000 was assessed and taxed as non-homestead property at the rate applicable to each class for property unaffected by the exemption. In contrast, under Minn.Stat. § 273.13, subd. 7, the homestead exemption afforded class 3c real property is divided into three classifications according to the value of the homestead and assessed at a graduated rate. In my view, such a scheme does not comport with the constitutional mandate that taxes must be "uniform on the same class of subjects." "Ability to pay," as used by the *Apartment Operators* court, referred to the ability of homeowners owning a homestead of greater value than that afforded by the exemption to pay the higher non-homestead rate for the remaining value. It did not give constitutional approval for graduated rates within the homestead exemption itself.

I join the dissent of YETKA, J.

KELLEY, Justice (dissenting).

I join the dissents of YETKA and WAHL, JJ.

YETKA, Justice (dissenting).

Article X, section 1 of the Minnesota Constitution requires taxes to be "uniform upon the same class of subjects * * *." Because I find that language to be clear and unambiguous and because all owners of homestead property constitute a single class, I would find that a tax that attempts to assess different homeowners at different rates violates the aforesaid provision.

The history of the adoption of our United States and Minnesota Constitutions reveals that our founding fathers were intent on a *written* document which defined the powers *given* to the government by the people. The founders wished to remind future generations that all people have certain inalienable rights; that constitutional documents limited the exercise of power, as well as delegated it; and that those powers not delegated to the government remained with the people. Article X, section I was clearly intended to be a limitation on the power to tax.

You are either a homeowner or you are not. Realistically, it cannot be said that homeowners who are assessed at one rate if their homes are worth $30,000, another at $60,000 and a third if over $60,000 are taxed by laws "uniform upon the same class of subjects." I think the majority opinion misinterprets this court's decision in *Apartment Operators Ass'n v. City of Minneapolis,* 191 Minn. 365, 254 N.W. 443 (1934). That case was decided in the midst of the Great Depression when the legislature felt compelled to limit real estate taxes in order to protect people's homes. The legislature decided that the value of homesteads up to $4,000 would be assessed at a lower rate, but that all value greater than $4,000 would be assessed as non-homestead property. The legislature has always had the right to define what a homestead is and that's all it did in *Apartment Owners.* Any other language was unnecessary to decide that case and is pure *dicta.* Because of the method used in arriving at assessed valuation and because of the inflation over the past half century, a home with an *assessed* valuation of $4,000 in 1933 might be equal to a home worth well in excess of $100,000 today. Thus, if the legislature adopted a statute defining a homestead as a home not exceeding $100,000 and taxed it at a lower rate than other real estate, we would have the situation presented in *Apartment Operators.*

The pertinent language of the current article X, section 1 was adopted in 1906 in what was then article IX, section 1 of the state constitution. Minn. Const. of 1857, art. IX, § 1 (1906). Prior to 1906, article IX, section 1 provided that taxes be "nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation and be equalized and uniform throughout the state." Minn. Const. of

1857, art. 9, § 1. It is clear that the 1906 amendment gave the legislature greater latitude, but it is also noteworthy that the new amendment retained in the constitution the restriction that taxes should be "uniform upon the same class of subjects." Clearly, the amendment was not intended to allow the progressive taxation of property. The Sixteenth Amendment to the United States Constitution only became effective in 1913, and, prior to its adoption, it was assumed that a progressive income tax was impermissible. Minnesota itself did not adopt an income tax until 1933. Those drafting the 1906 amendment could not have contemplated taxing real estate in a manner not even then allowed for income.

A property tax is entirely different from an income tax. The latter is, quite rightly, a progressive tax, with both the amount and the rate of the tax rising with income and, thus, the ability to pay. The property tax, on the other hand, is a so-called *ad valorem* tax, a tax according to value. If a tax of 1% were levied against the value of property, the net tax in dollar amounts might differ on different parcels of land, but the percentage of the tax would still be the same and would be an equal burden according to the property's value. Therefore, if real estate had a $50,000 value, 1% would yield a $500 tax and a $100,000 parcel of real estate would have a tax of $1,000: The *rate* is the same, but the *burden* is based on value.

However, the law which is the subject of this litigation assessed the first $30,000 of property at 17%, the second $30,000 at 19% and all value over $60,000 at 30%. The result could mean a net tax on a $120,000 home would be not just double that of a $60,000 home, but over three times as much. That would be so because the base value against which the mill levy is made rises progressively.

It may be true that there is some overall relationship between the value of a person's home and his or her ability to pay taxes. However, if the extremes of simple hovels and wealthy mansions were excluded, it is also true that, in very many cases, there is no relationship at all. For some, a home is a luxury on which they lavish a disportionate part of their income and wealth. For others, it is merely a necessity, a place to go to and spend as little time as possible. Two persons could work at the same place of business and have identical incomes; yet, one might own a home worth $30,000 and the other $100,000. Quite naturally, at the same rate of tax, the $100,000 home would pay more, but why should the rate be higher too?

The court, in *Apartment Operators*, in upholding putting homesteads in *two* classifications, said: "Placing homesteads in two classes on the basis of valuation was within the scope of the broad power of the legislature to classify property for the purpose of taxation." *Id.*, 191 Minn. at 370, 254 N.W. at 445. The majority opinion, in a footnote, points out that the legislature has apparently gone back to this two-class scheme, but this does not end the issue. *Lund v. County of Hennepin,* 403 N.W.2d 617, 618 n. 1, (Minn.1987). If we uphold this scheme of taxation, there is nothing to prevent an even more progressive scheme from being adopted in the future. Envision an even more serious scenario: Suppose the legislature were to decide on a *regressive scale,* that is, reverse the tax structure here and assess all homes at the rate of 30% on the first $30,000; 19% on the second $30,000 and 17% over $60,000. The deputy attorney general at oral argument, when presented with that question, argued that, while the legislature could tax property progressively, it could not adopt a regressive scale because that would be unfair, unreasonable and perhaps unconstitutional; yet, he could offer no legal authority as to why it would be unconstitutional. In my mind, if the legislature can do the one, it can do the other. The constitution is there to protect all, rich and poor alike, and that is precisely why it was written as it was.

The state argued further that, if the principles of this dissent were to be adopted, the result would be a loss in tax revenues, and should the legislature try to prevent such a loss, an increase in taxes on real estate of lower value would occur while those on expensive real estate would

decrease. (The state's argument is one heard more and more frequently in this court and is best illustrated by this syllogism: This court's decision could have drastic consequences. Drastic consequences do, in fact, follow the court's decision; *ergo*, it was the decision of the court that caused the consequences.) The state's argument is fallacious. It is so, first, because it assumes that the legislature would not be willing to assume a loss in revenue from a tax structure found to be invalid and, second, that there is no other way to reduce real estate taxes than by means of the very complicated tax assessment and classification system adopted in this state.

I will take the unusual step of outlining several things that the legislature can do to reduce the burden on all real estate. I do this not as an undertaking to offer alternative solutions, but simply because I believe that, all too frequently, criticism is directed at the courts for causing problems by its decisions without outlining solutions to those problems. We are reluctant not because we are without ideas, but simply because, in the constitutional scheme of separation of powers, it is the legislative branch which is given the power to tax and appropriate money. However, we are in a position to understand the legal and judicial systems.

In light of the language both in article X, section 1, which is the subject of this litigation, and article I, section 8 of our constitution,[1] the legislature might well consider more state funding of the courts and the criminal justice system as a whole. Why should local units of government—many impoverished—pay for the entire cost of public prosecution for crime and the state public defender system? Moreover, why should a poor rural county be expected to pick up the entire cost for prosecuting a notorious criminal merely because the crime was committed in that county? Undoubtedly, similar arguments could be made for public education given the constitutional guarantee of a "general and uni-

form" system of public schools contained in article XIII, section 1 of our constitution. If the state were to assume greater funding in these areas, all real estate taxes could be reduced.

The majority states that, in this case, relator's property was taxed at only 4.9% of market value and goes on to hold that that rate of taxation is clearly not excessive. I disagree. I believe it is onerous and unreasonable. Under the present system, relator's property pays far more for governmental services than other parcels which require more of those same services but pay much less in taxes. Some property owners in this state may pay as little as 1% of market value in real estate taxes. Relator pays five times more. Is that reasonable? Moreover, here, the owner will not only pay the purchase price of his property, but also pay for the property again in the form of taxes in the next 20 years if taxed at his present rate of nearly 5% per year of market value. An owner of real estate who pays more than twice for his property over the life expectancy of the improvements thereon should be found to suffer a burden invoking constitutional concerns.

The other issues dealt with in the majority opinion were not adequately briefed nor argued even though the court specifically called for *amicus* briefs from a number of organizations. Thus, I do not believe the court's opinion should be firm precedent thereon.

I believe the taxpayer in this case has a legitimate complaint. If the constitutional phrase, "equal on the same class of subjects," is to mean anything, let us apply it; otherwise, we will return to those days prior to 1776 when we were a nation not of laws, but of men. The Constitution of the United States and that of the State of Minnesota constitute an island in the fast stream of life—mostly a totalitarian life. I fear that opinions of the courts which do not impose a strict construction of the clauses in the constitutions which protect

---

1. "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without

purchase, completely and without denial, promptly and without delay, conformable to the laws." Minn. Const. art. I, § 8.

individuals from unreasonable taxation will allow that island of freedom to erode away until it ceases to exist.

Nineteen eighty-seven is the year we celebrate the bicentennial of our United States Constitution. It is also the 130th anniversary of Minnesota's first constitutional convention in 1857. It should be the year that the rights guaranteed by these constitutions are enhanced. I thus dissent.

WAHL, Justice (dissenting).

I join the dissent of YETKA, J.

KELLEY, Justice (dissenting).

I join the dissents of YETKA and WAHL, JJ.