## MILES HOMES, DIV. OF INSILCO CORP., Relator,

v.

## Dennis J. SCHLOEDER, Commissioner of Jobs and Training, Respondents.

### No. C9-87-84.

Court of Appeals of Minnesota.

June 16, 1987.

Richard A. Nelson, John W. Haine, Faegre & Benson, Minneapolis, for relator.

Dennis J. Schloeder, pro se.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE[*], JJ.

## OPINION

FORSBERG, Judge.

Relator Miles Homes appeals from a determination by the Department of Jobs and

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Training that respondent Dennis Schloeder was an employee for purposes of this state's unemployment compensation laws. Miles claims Schloeder was an independent contractor or, in the alternative, that Schloeder was a "direct seller," and therefore specifically excluded from coverage under the unemployment compensation statutes, Minn.Stat. § 268.04, subd. 12(15)(r) (1986). We agree that Schloeder was a direct seller, and accordingly, we reverse.

## FACTS

Miles Homes is engaged in the business of selling prefabricated residential homes to consumers. Miles does not actually construct the homes; rather, an individual who purchases Miles' precut, premarked, and premeasured materials will either act as his own general contractor or hire someone else to construct the home. Miles will, upon request, recommend names of general contractors.

Miles finances the purchase of the materials until a home is actually constructed and the buyer can obtain a mortgage. In some cases, Miles will also finance the construction of the foundation, well, and septic services. Additional options available from Miles include electrical, plumbing, and heating packages.

Dennis Schloeder worked for Miles as a sales representative for two years, until May 20, 1985, when he was terminated for "lack of production." His written employment agreement with Miles stated in part:

> You shall: have sole control over your time and the manner and means of solicitation of sales; be an Independent Contractor and not an employee of Miles; and bear all expenses incidental to your sales efforts, including but not limited to transportation, telephone, postage, and printing. You shall also be solely responsible for paying all federal and state taxes, such as self employment and social security taxes, incurred as a result of your status as an Independent Contractor.

Schloeder was paid by Miles on a straight commission basis. Schloeder and the other sales representatives were required to make weekly telephone calls to Miles to report on the status of their appointments, leads, and other sales activities. Each representative was also required to come into Miles' office approximately one day per week to respond to customer calls and advertising generated by Miles. These days were called "floor days," and the representatives' schedules were worked out among themselves. Very few sales were generated from walk-ins at the sales office, however.

Miles provided each sales representative with an office, a desk, a telephone, office equipment, a secretary service, and other necessary office services. Sales representatives were not required to work out of these offices; other than "floor days," they were allowed to work out of their homes or anywhere convenient. Sales presentations were generally made at seminars or in customers' homes. Schloeder spent most of his time away from the office.

## ISSUES

1. Was Schloeder a "direct seller" and therefore excluded from coverage under this state's unemployment compensation laws?

2. Was Schloeder an "employee" of Miles Homes?

## ANALYSIS

### I.

Minn.Stat. § 268.04, subd. 12(15)(r) (1986) provides that the term "employment" as used in the unemployment compensation statutes does not include "[s]ervices performed as a direct seller as defined in United States Code, title 26, section 3508." That section defines "direct seller" as follows:

> (2) Direct seller.—The term "direct seller" means any person if—
>   (A) such person—
>     *     *     *     *     *     *
>   (ii) is engaged in the trade or business of selling (or soliciting the sale of) consumer products in the home or oth-

erwise than in a permanent retail establishment,

(B) substantially all the remuneration (whether or not paid in cash) for the performance of the services described in subparagraph (A) is directly related to sales or other output (including the performance of services) rather than to the number of hours worked, and

(C) the services performed by the person are performed pursuant to a written contract between such person and the person for whom the services are performed and such contract provides that the person will not be treated as an employee with respect to such services for Federal tax purposes.

26 U.S.C. § 3508 (1987).

There is no question that the conditions of clauses (B) and (C) have been met here. Schloeder was paid on a straight commission basis, directly related to his number of sales, and his contract with Miles provided that he would not be treated as an employee for tax purposes. A Commissioner's representative from the Department of Jobs and Training, however, determined that Schloeder did not sell "consumer products," and that some of his sales took place in a "permanent retail establishment." We disagree.

First, as Miles notes in its brief, the Minnesota Supreme Court has indicated that prefabricated homes are consumer products for sales tax purposes:

> The purpose of the sales tax statutes and regulations is to impose a tax on the transfer of personal property to the ultimate consumer. It can hardly be disputed that prefabricated custom home components retain their character as personal property until they are affixed to a foundation constructed on real property.

*Sterling Custom Homes v. Commissioner of Revenue*, 391 N.W.2d 523, 525 (Minn. 1986). Regulations proposed by the Internal Revenue Service define "consumer product" as follows:

> (3) *Consumer product.* The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or so installed).

51 Fed.Reg. 619, 624 (1986).

The Commissioner's argument that Miles sold a package of sales and services is not supported by the record. The services offered, such as recommendation of contractors and assistance with financing, were optional. Further, the Commissioner's representative erred by finding that Miles was engaged in the "selling and construction of single family homes." Miles, in fact, did not engage in any construction of its homes; it merely sold the boards, studs, sheetrock, and other materials precut, premeasured, and ready for construction.

Finally, the record does not indicate that Schloeder sold Miles' product at a "retail establishment." Rather, the testimony indicated that sales presentations were generally made at seminars or in customers' homes. Very few of Schloeder's sales were due to walk-ins at the sales office.

## II.

Because we have determined that Schloeder's services are excluded from coverage under the direct seller provision of the unemployment compensation statutes, we need not address Miles' argument that Schloeder was an independent contractor.

## DECISION

The Commissioner's representative erroneously determined that Schloeder was entitled to receive unemployment compensation benefits. His services as a direct seller were excluded from the definition of "employment" for unemployment compensation purposes.

Reversed.